MALLINCKRODT CHEMICAL WORKS, Appellant, v. RUDOLPH NEMNICH, Respondent.

**St. Louis Court of Appeals, November 28, 1899.***

1. **Contract: RESTRAINT OF TRADE.** A contract (for a valid consideration) of sale of a secret process for the manufacture, or composition of drugs, of other matter or of machinery, used in trade, which restricts the vendor from using the same, or imparting his knowledge to others, or selling the same article, is a reasonable restriction when necessary for the protection of the vendee, and the article is not one of prime necessity to the general public.

2. ———: **AGREEMENTS IN RESTRICTION OF TRADE.** Agreements in restriction of trade will be upheld when the restriction does not go beyond some particular locality, is founded on a sufficient consideration, and is limited to time, place and person.

3. ———: ———. In the case at bar it is held that the contract is not enforcible.

Appeal from the St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED.

*McKeigan, Barclay & Watts* for appellant.

The question raised by appellant's assignment of error is whether or not that portion of the contract contained in the sixth clause thereof is valid as being a reasonable restraint of trade, or invalid because an unreasonable restraint of trade as creating a monopoly and void. A contract (for a valid consideration) of sale of a secret process for the manufacture or composition of drugs, of other matter or of machinery, used in trade, which restricts the vendor from using the same, or imparting his knowledge to others, or selling the same article, is a reasonable restriction when

*This case was not delivered to reporter when decided.

necessary for the protection of the vendee, and the article is not one of prime necessity to the general public. Hagg v. Darley, 47 L. J. Ch. N. S. 567; Alcock v. Gibertson, 5 Duer. 76; Jarvis v. Peck, 10 Paige 188; Underwood v. Smith, 46 N. Y. 654.

No brief furnished reporter for respondent.

BLAND, P. J.—Plaintiff filed in the circuit court the following amended petition:

"The Mallinckrodt Chemical Works as plaintiff, by the undersigned, its attorneys, state that it is a corporation under the laws of Missouri. Plaintiff for more than ten years last past has been, and it is now, engaged in the manufacture and sale of drugs and chemicals, and it has its principal office and manufactory in the city of St. Louis. The business of plaintiff is extensive. At, and for some years prior to, the time when plaintiff made the contract with defendant (hereinafter mentioned), the commercial operations of the plaintiff included numerous transactions for the sale of its manufactured drugs and chemicals, not only with persons in the city of St. Louis, but also in very many other parts of the United States of America, in a large number of the different states and territories thereof; and in the Dominion of Canada, in the Republic of Mexico, and in several of the countries in Europe, and of Asia and of Australia. Plaintiff's business of selling drugs and chemicals is still as extensive as when said contract was made, and is enlarging in extent each year. Plaintiff's business of manufacturing drugs and chemicals is moreover, to a great degree scientific in its nature. It requires a large measure of skill in the adoption and use of various processes for the manufacture of the drugs and chemicals sold by plaintiff as aforesaid, and many of the processes followed by its employees in the

plaintiff's said manufactory are the products of discoveries, inventions and improvements by the officers and employees of plaintiff, belong to the plaintiff, and constitute valuable property of plaintiff.

"The defendant, Rudolph Nemnich, and said corporation, June 15, 1893, entered into a contract (which was signed by both parties), in the following terms:

"These articles of agreement entered into this fifteenth day of June, 1893, by and between the Mallinckrodt Chemical Works, a corporation, of the one part, and Rudolph Nemnich of the other part, witnesseth, that they the said parties for the considerations and the mutual covenants hereinafter mentioned, agree and covenant to and with each other in manner following, to wit:

"First. That the said corporation will, for and during the space of five years, to commence on the first day of January, 1893, employ said Rudolph Nemnich as chemist in its factories and to do such other services therein as he will be directed to do by the officers of said corporation, and that said Rudolph Nemnich shall and will during said term diligently and faithfully serve in the employ of said corporation, as such chemist, or as directed to by its officers, and that he will devote all his time, skill and industry to the business of said corporation.

"Second. That said Rudolph Nemnich shall at all times during said term fulfill and keep the lawful and reasonable commands and directions of said corporation and its officers, and that said Rudolph Nemnich shall, neither during said term not at any time afterwards, disclose the same or the secrets of his employment, or any of the processes, plans, operations, business dealings, or transactions, of said corporation to any person or persons whatsoever.

"Third. That all the discoveries, inventions and improvements which said Rudolph Nemnich during said term

may use, apply or make in any chemicals, pharmaceutical preparations, medicines, compounds, machinery, apparatus, or articles of any kind whatsoever, or in the several processes of manufacturing or compounding the same, whether they are patentable or unpatentable, shall become, be, and remain the property of said corporation; and said Rudolph Nemnich hereby and herewith sells, assigns, and transfers to said corporation the full and exclusive right to use and apply the same, said corporation to have the full and exclusive right to obtain and take out letters patent thereon.

"Fourth. That as and for a consideration for such services to be done, observed and performed by said Rudolph Nemnich, as aforesaid, and as his annual salary therefor, said corporation will pay him the sum of one thousand dollars, together with an increase in his salary of two hundred dollars for each successive year during said term, over the preceding year.

"Fifth. That if said Rudolph Nemnich shall be absent from his said employment by reason of sickness, disability, or other causes for periods exceeding three weeks at a time, the said corporation shall be at liberty to make deductions from his annual salary in proportion to his time of absence.

"Sixth. That he, the said Rudolph Nemnich, agrees and covenants and herewith binds himself that, for and within the period of six years after he has left the service of said corporation, and within the territory of the United States, he, the said Rudolph Nemnich, will not, in any manner or form, directly or indirectly, either by himself or with others, engage in the selling, dealing or manufacture of any of the articles now or then being manufactured, sold or dealt in by said Mallinckrodt Chemical Works.

"Seventh. That said Rudolph Nemnich shall at no time whether during said term of employment or afterwards, directly or indirectly, with and by himself, or with and to any other person, firm or corporation, utilize, impart, or

apply the knowledge or information acquired by him during his said employment by said Mallinckrodt Chemical Works regarding any secrets, discoveries, inventions or improvements in making, using, applying, or compounding any chemicals, pharmaceutical preparations, medicines, compounds, machinery, or apparatus, or regarding any discoveries, inventions, improvements, or secrets in the processes, art and science of manufacturing and compounding said articles, it being well understood that all such discoveries, inventions, improvements, or secrets made or acquired by said Rudolph Nemnich during his said employment are and shall always remain the exclusive property of said Mallinckrodt Chemical Works.

"In witness whereof, said Mallinckrodt Chemical Works has caused these presents to be signed by its president and its common corporate seal to be hereto affixed, and said Rudolph Nemnich has signed and sealed these presents at St. Louis, Missouri, this fifteenth day of June, 1893, in duplicate.

"The said defendant, at the time of making said contract, was sojourning in the city of St. Louis, Missouri; but, nevertheless, was then a citizen of the Empire of Germany. Prior to the date of said contract he had come to the state of Missouri from Wiesbaden, Germany. He had practiced his profession as a chemist in Germany, his native country; and both then and at the present time defendant had an ample and extensive field in which his profession as chemist might be practiced in that country as well as in many other parts of the civilized world. Factories for the manufacture and sale of chemicals and drugs exist now (and have for more than ten years last past) in many parts of Great Britain, France, Germany, Austria, Italy, Belgium, and in other countries; and in said countries defendant might now find, and at any time in the past ten years might have found, professional employment as chemist, if he desired, at reason-

able and remunerative terms of compensation for such services as chemist. The drugs and chemicals manufactured by plaintiff have for many years past been extensively used in various parts of the United States (and in the other countries in which plaintiff does business as hereinbefore mentioned) for compounding medicinal prescriptions, for scientific experiments, and in many other ways wherein drugs and chemicals of high order of purity are required. Plaintiff believes that the said products of its manufactory enjoy a good reputation for purity and efficiency in the drug trade throughout the United States and in said other countries into which its business extends; and plaintiff charges the fact so to be.

"Defendant went into the service of plaintiff in its manufactory according to said contract, and remained in the employ of plaintiff under said contract until January, 1898, when his term of said employment by said plaintiff expired; and he took and enjoyed all the fruits of its provisions according to its terms until said contract had been fully complied with on the part of plaintiff. After the expiration of said term, defendant left the service of plaintiff, and at a more recent date heretofore in the year, 1898, in the city of St. Louis, defendant entered upon and is now engaged in the manufacture and sale of chemicals, drugs and other articles of the same kind and character as those manufactured, sold and dealt in by the plaintiff at the present time (as well as dealt in at the time when said contract was entered into), that said acts on defendant's part are a breach of the obligation imposed by his agreement aforesaid as part of the said contract.

"During defendant's stay in plaintiff's service he had full and free access to the working departments of plaintiff's manufactory and acquired knowledge of many of the processes of manufacture in use by plaintiff and its employees for the manufacture of drugs and chemicals. De-

fendant during said service also obtained information of the names of many of plaintiff's regular customers, and of persons who purchased drugs and chemicals of plaintiff in various sections and states of the United States. Defendant in the manufacture and sale of chemicals and drugs (as aforesaid) is utilizing and applying for his own use the said knowledge and information so acquired and obtained by him while in plaintiff's employ.

"It would be against equity for defendant to take advantage of the information gained by him while in plaintiff's employ under the aforesaid agreement, or to carry forward the business of manufacturing drugs and chemicals on which he has embarked, in competition with plaintiff, his said former employer. Defendant's said acts are contrary to equity and good conscience.

"Plaintiff asserts that no remedy that could lawfully be obtained by the recovery of damages of defendant would be adequate or efficient to redress the said breach of said agreement, which said breach continues from day to day.

"Plaintiff therefore prays that defendant be perpetually restrained and enjoined from further manufacturing in the state of Missouri or Illinois, any drugs and chemicals, now or hereafter manufactured by plaintiff, until January 1, in the year 1904; and plaintiff prays for such further relief as may be just."

To this petition defendant filed the following demurrer:

"Now comes the defendant herein and demurs to the amended petition of the plaintiff herein filed, and for grounds of said demurrer assigns:

"First. That said amended petition likewise fails to . set forth facts sufficient to constitute a cause of action or ground of relief against the defendant.

"Second. Because the contract fully set forth in said amended petition, so far as it attempts to restrain this de-

fendant in the exercise of his profession in the United States, is contrary to public policy, and void.

"Third. Because there is no equity in said bill.

"Wherefore—" etc.

The court sustained the demurrer, and plaintiff declining to plead further judgment was entered for defendant, from which plaintiff appealed after filing an unavailing motion in arrest of judgment.

The question raised by appellant's assignment of error, is whether or not that portion of the contract contained in the sixth clause thereof is valid as being a reasonable restraint of trade, or invalid because an unreasonable restraint of trade, as creating a monopoly and void. A contract (for a valid consideration) of sale of a secret process for the manufacture or compositions of drugs, of other matter or of machinery, used in trade, which restricts the vendor from using the same, or imparting his knowledge to others, or selling the same article, is a reasonable restriction when necessary for the protection of the vendee, and the article is not one of prime necessity to the general public. Hagg v. Darley, 47 L. J. Ch. N. S. 567; Alcock v. Gibertson, 5 Duer. 76; Jarvis v. Peck, 10 Paige 118; Underwood v. Smith, 46 N. Y. 654; Hard v. Seeley, 22 L. R. A. 47; Toole v. Gross, 13 L. R. A. 625; Brown v. Lamar, 69 Ga. 656; Simmons Med. Co. v. Simmons, 81 Fed. Rep. 163. The defendant did not sell the plaintiff any secret process for compounding any drug or medicine, nor is it specifically alleged that the defendant by reason of his employment by the plaintiff obtained knowledge of any of the secret processes used and possessed by plaintiff in the manufacture of drugs and medicines. On the contrary from the averments in the petition to the effect, that manufactories where drugs similar to those produced by the plaintiff exist in Continental Europe, whence defendant came, and where he practiced his profession as a chemist, the inference to be drawn is that plaintiff

acquired secrets for compounding drugs from him, rather than that defendant acquired such secrets from plaintiff. Nor is it specifically alleged that the articles being manufactured and sold by the defendant are compounded or manufactured by any of the secret processes possessed and used by the plaintiffs. From aught that appears by the allegations of the petition, the articles of the "same kind and character" as those manufactured by the plaintiff, which it is alleged defendant is manufacturing and selling, are ordinary articles and the processes of manufacturing them matter of common knowledge. The petition reads to us more like an effort on the part of the pleader to throw a drag net around defendant's manufactory, to drag it into court and then see what could be discovered, rather than to charge a specific violation of his contract relating to plaintiff's secret processes. Since bills of discovery are not permissible in the administration of equity in this jurisdiction, the effort of plaintiff to travel in that road was effectually and correctly barred by the general demurrer. If the petition can be sustained it must be done on the ground that the contract sued on does not unreasonably restrain trade, and for that reason is valid and enforcible. The general doctrine is that agreements in restriction of trade will be upheld when the restriction does not go beyond some particular locality, is founded on a sufficient consideration, and is limited as to time, place and person. Peltz v. Eichele, 62 Mo. 171; Presbury v. Fischer, 18 Mo. 50; Capin v. Brown, 23 Am. S. R. 297; Hubbard v. Miller, 27 Mich. 15; Thomas v. Miles, 3 Ohio State 274; Boordmen v. Wheeler, 27 Hun. 616; Curtis v. Gokey, 68 N. Y. 300; Pom. Eq., p. 1335, sec. 434, and note; Skrainka v. Scharringhausen, 8 Mo. App. 522; Diamond Match Case, 106 N. Y. 473. The converse of this proposition, i. e., that a contract in restrain of trade which is not restricted as to time and place is against public policy as creating a monopoly and void, is well-settled law. Long v.

Towl, 42 Mo. 545; Taylor v. Saurman, 110 Pa. 3; Alger v. Thacher, 10 Pick. 51; Caswell v. Gibbs, 33 Mich. 331; Wiley v. Baumgartner, 97 Ind. 66; Wright v. Rider, 36 Cal. 342; Beard v. Dennis, 6 Ind. 200; Bishop v. Palmer, 146 Mass. 469; Hall's Appeal, 100 Am. Dec. 584; Hodge v. Sloan, 1 Am. St. Rep. 816; Berlin Machine Works v. Perry, 71 Wis. 495; Taylor v. Blanchard, 13 Allen 370. Where there are special circumstances rendering the restriction reasonable and useful and the promisor is not restrained more than is needful for the protection of the promisee, a contract in restraint of trade supported by a valid consideration will be upheld. Dunlap v. Gregory, 61 Am. Dec. 746; California Steam Nav. v. Wright, 65 Am. Dec. 511, and the reasonableness of the limitation as to space will be judged by the extent of the territory which the trade takes in and of the nature of the article to which the restraint applies, Texas Oil Company v. Adorie, 83 Tex. 650; Badische v. Schott (1892) N. W. Rep. 133, ch. 447. Plaintiff alleges that its trade is extensive; that it is not confined to the city of St. Louis (where located), but extends in very many parts of the United States and its territories, to Canada, Mexico, and South America. It does not allege that its trade is co-extensive with the territory of the United States, or that it is world-wide, nor that its trade is in all of the states of the Union, or in all of its territories or in all parts of any state or territory of the United States, but that it is in a large number of the different states, without naming any particular state of this number. It can not, therefore, be ascertained from the averments of the petition that it would be reasonable and necessary for the protection of the plaintiff or useful to it, to enforce the restriction in all the territory covered by the contract—the whole of the United States; nor can it be ascertained from the petition that it would be reasonable and necessary to protect the plaintiff to apply the restriction to the states of Missouri and Illinois, as prayed

for by plaintiff, for it is not specifically averred that plaintiff has any trade in the state of Illinois or in Missouri, beyond the limits of the city of St. Louis. This class of contracts is always regarded with suspicion by the courts, as their effect usually is to create a monopoly, and before any one of them will be upheld, it should clearly appear that no monopoly is created by it; that its enforcement will not prejudice the public; that it is reasonable as to time, space and person, not oppressive or injurious, and that the contract is founded on a good consideration, and that its enforcement will be useful and beneficial to the promisee.

The restriction as to time provided for in the contract in the case at bar is not unreasonable, but in the light of the allegations of the petition as to the extent of plaintiff's trade, the space covered by the contract—the whole territory of the United States—is unreasonable, and can not be enforced. Plaintiff seems to have appreciated this difficulty, and in its amended petition asks that the contract as to space be applied only to the states of Missouri and Illinois. Its contention is that while the contract as applied to the whole of the United States may be void, yet it may be applied to a particular part or parts of the territory of the Union and be held valid. This might be done, if the sixth clause of the contract had specifically mentioned the states of Missouri and Illinois and disjoined them from the territory of the United States as a whole, but it is not so written in the contract; the space mentioned in the contract is not divided, the parties did not choose to divide it, and what they did not do the court can not do for them, but must construe the contract as the parties made it; courts can not make contracts for parties, nor make that divisible which the parties have made indivisible. The space covered by the contract is all the territory of all the states and of all the territories of the United States—not the territory of one, two or more of the states which the plaintiff might select. If a selection of ter-

ritory has to be made to make valid the contract, then the defendant has as much right to make that selection as the plaintiff. To make such a selection it would be necessary for the parties to come together and make a new contract. When this is done the plaintiff may have a contract that is enforcible. The present one is not, and we affirm the judgment. Judge *Bond* concurs; Judge *Biggs* dissents.

### DISSENTING OPINION BY JUDGE BIGGS.

The plaintiff is a corporation and is engaged in the manufacture and sale of drugs and chemicals. Its principal business office and factory are in the city of St. Louis. The defendant is a chemist by profession. On the fifteenth day of June, 1893, he entered into a written contract with plaintiff in which he agreed for a stipulated salary to render services as chemist in plaintiff's factories for the period of five years. In consideration of the salary to be paid he also agreed that all new processes or discoveries made by him in compounding medicines or in making pharmaceutical preparations, etc., should be the exclusive property of the plaintiff, and that he would not at any time use such secret processes or others belonging to plaintiff, or impart information thereof to others. The defendant also contracted that he would not for the period of six years after his employment engage in selling or manufacturing any of the articles then being manufactured by the plaintiff within the United States. The present action is in equity to enjoin the breach or violation of the foregoing special covenants. The court sustained a general demurrer to the bill. The plaintiff has appealed.

The portions of the contract concerning the covenant first above referred to are contained in the second, third and seventh clauses, to wit:

Second. "That said Rudolph Nemnich shall at all times during said term fulfill and keep the lawful and rea-

sonable commands and directions of said corporation and its officers, and that said Rudolph Nemnich shall, neither during said term nor at any time afterwards, disclose the same or the secrets of his employment, or any of the processes, plans, operations, business dealings, or transactions of said corporation to any person or persons whatsoever."

Third. "That all the discoveries, inventions, and improvements which said Rudolph Nemnich during said term may use, apply or make in any chemicals, pharmaceutical preparations, medicines, compounds, machinery, apparatus, or articles of any kind whatsoever, or in the several processes of manufacturing or compounding the same, whether they are patentable or unpatentable shall become, be, and remain the property of said corporation, and said Rudolph Nemnich hereby and herewith sells, assigns, and transfers to said corporation the full and exclusive right to use and apply the same, said corporation to have the full and exclusive right to obtain and take out letters patent thereon.

Seventh. "That said Rudolph Nemnich shall at no time, whether during said term of employment or afterwards directly or indirectly, with and by himself, or with and to any other person, firm or corporation, utilize, impart, or apply the knowledge or information acquired by him during his said employment by said Mallinckrodt Chemical Works regarding any secrets, discoveries, inventions, or improvements in making, using, applying, or compounding any chemicals, pharmaceutical preparations, medicines, compounds, machinery, or apparatus, or regarding any discoveries, inventions, improvements, or secrets in the processes, art and science of manufacturing and compounding said articles, it being well understood that all such discoveries, inventions, improvements or secrets made or acquired by said Rudolph Nemnich during his said employment are and shall always remain the exclusive property of said Mallinckrodt Chemical Works."

As to the breach of this portion of the contract the petition after alleging that in 1898, the defendant had (in the city of St. Louis) engaged in the manufacture and sale of drugs (on his own account) of the same kind and character as those manufactured by the plaintiff and was then so engaged, continued as follows, to wit:

"During defendant's stay in plaintiff's service he had full and free access to the working departments of plaintiff's manufactory, and acquired knowledge of many of the processes of manufacture in use by plaintiff and its employees for the manufacture of drugs and chemicals. Defendant during said service also obtained information of the names of many of plaintiff's regular customers and of parties who purchased drugs and chemicals of plaintiff in various sections and states of the United States. Defendant in the manufacture and sale of chemicals and drugs (as aforesaid) is utilizing and applying for his own use the said knowledge and information so acquired and obtained by him while in plaintiff's employ."

The petition contains this further allegation, to wit:

"Plaintiff's business of manufacturing drugs and chemicals is, moreover, to a great degree scientific in its nature. It requires a large measure of skill in the adoption and use of various processes for the manufacture of the drugs and chemicals sold by plaintiff as aforesaid, and many of the processes followed by its employees in the plaintiff's said manufactory are the products of discoveries, inventions, and improvements by the officers and employees of plaintiff, belonging to the plaintiff, and constitute valuable property of plaintiff."

The appellee has filed no brief, hence the views of the learned trial judge are matters of conjecture. As to this branch of the case I assume that he was of the opinion that the petition was bad in that it failed to disclose what particular processes, inventions or discoveries, were being wrong-

fully utilized by the defendant, or what particular drugs or medicines were being manufactured or sold by him in violation of his contract. In the respects indicated the petition is faulty, but defendant's remedy was by motion to make it more specific or definite and not by general demurrer. Cockerill v. Stafford, 102 Mo. 57. If the defendant was uncertain as to the specific matters relied on by plaintiff to establish the alleged breaches, it was his privilege and remedy to call for a bill of particulars. The foregoing ground is the only one conceivable for sustaining the demurrer, for it is well-established law that one entering the employment of another engaged in manufacturing, may obligate himself not to make use of the secret methods, processes or inventions, belonging to his employer, and not to divulge the same to others. Such contracts are in nowise in restraint of trade, and they are good without limit as to time or space. The basis of the ruling is that the employer has a property interest in his secret trade processes or inventions, and that he has the unqualified right to protect such interest by contract with those entering his service. Thus the supreme court of Massachusetts (Peabody v. Norfolk, 98 Mass. 458), in treating of this subject said, that if one "invents or discovers, and keeps secret, a process of manufacture, whether a proper subject for a patent or not, he has not indeed an exclusive right to it as against the public, or against those who in good faith acquire knowledge of it; but he has a property in it, which a court of chancery will protect against one who, in violation of contract and breach of confidence undertakes to apply to his own use, or to disclose it to third persons."

Of the same subject it was said by the chancery court of England (Leather Cloth Co. v. Lorsent, 39 Law Journal Rep. loc. cit. 90) that the law was well settled "that a man may bind himself not to communicate that process (secret process) to anybody else, that he should not communicate that secret anywhere under any circumstances in any part of

the world to anybody. But how would it be possible to enforce such a covenant as that not to communicate the process, if he were at the same time to be at liberty to carry on that same trade with the same processes in such a way that they would have to ·be communicated to every servant and workman engaged by him in trade."

Pollock in his work on the Principles of Contract, p. 367, says: "A contract not to divulge a trade secret need not be qualified, and a man who enters into such a contract may to the same extent bind himself not to carry on a manufacture which would involve disclosure of the process intended to be kept a secret."

Under the foregoing authorities it is clear to my mind that the petition as to this alleged breach of the contract, was not subject to general demurrer.

The second covenant above referred to is contained in the sixth clause of the contract, to wit:

Sixth. "That he, the said Rudolph Nemnich, agrees and covenants and herewith binds himself that, for and within the period of six years after he has left the service of said corporation, and within the territory of the United States, he, the said Rudolph Nemnich, will not, in any manner or form, directly or indirectly, either by himself or with others, engage in the selling, dealing or manufacture of any of the articles now or then being manufactured, sold, or dealt in by said Mallinckrodt Chemical Works."

As to the alleged breach of this covenant the bill charges that "after the expiration of said term, defendant left the service of plaintiff, and at a more recent date heretofore, in the year 1898, in the city of St. Louis, defendant entered upon and is now engaged in the manufacture and sale of chemicals, drugs and other articles of the same kind and character as those manufactured, sold and dealt in by the plaintiff at the present time (as well as dealt in at the time when said contract was entered into); that said acts on

defendant's part are a breach of the obligation imposed by his agreement aforesaid as part of said contract."

The foregoing covenant being unlimited as to space is one in general restraint of trade, and unquestionably under the letter of the earlier decisions both in England and in this country, covenants of that character are void. The reasons which led the English courts to repudiate and denounce such contracts were based on the early conditions in England before the building of railroads and the discovery and use of the telegraph. Under such conditions the courts declared that it was oppressive for an obligee to contract with his obligor for the latter not to engage in a particular business or follow a particular trade within the entire realm. When the cases are examined, however, it will be found that the ruling rests on the supposed unreasonableness of such covenants. The object and advantage sought by such a stipulation is the avoidance by the obligee of competition in his own business. Under the then conditions of the country, that is, before distances were annihilated by railroads and the telegraph, the courts declared that an obligee could derive no possible advantage by compelling his obligor not to carry on a similar business or trade at a point so far distant that competition between the two could not possibly arise, hence the rulings that such contracts were necessarily oppressive and unreasonable, and consequently void. This being the reason of the rule it is necessarily a variable one depending upon the means of commercial communication. What would at one time and under primitive conditions have been an unreasonable, oppressive and useless restriction, would not be so under modern conditions. Looking at the question in this way the later and better considered cases both in England and in the United States have denied that a covenant in general restraint of trade, that is a restriction extending over the entire Kingdom, State or United States, is

*ipso facto* unreasonable and void, but that the question of the reasonableness or unreasonableness of such a covenant must be determined by the facts and circumstances of each particular case. Thus the chancery division of the high court of justice of England decided in the case of Roussillon v. Roussillon (1880), 14 Chan. loc. cit. 356, that "the question of extent is really a question of reasonableness, and the reasonableness must vary with the facility of the means of communication. If a trade is carried on over a wide extent either through a whole country or through a whole continent, there is nothing unreasonable in the restraint being equally extensive."

In Leather Company v. Lorsent (1869), L. J. Ch. loc. cit. 90, James, vice-chancellor, in discussing the earlier cases on the subject said: "The covenant, no doubt, is expressed in very large words, and it is insisted that the mere fact that the covenant is 'not to carry on nor allow to be carried on in any part of Europe,' is in itself what is called a general restraint of trade, and that what is called a general restraint of trade is a restraint of trade throughout the United Kingdom, and that in that form a restraint of trade extending throughout the United Kingdom is upon the face of it bad; that something short of it may be allowable, provided the circumstances justify it. I do not read the cases as having laid down that unrebuttable presumption which was insisted upon with so much power by Mr. Cohen. The truth is that all the cases, when they come to be examined, according to my view of it, establish this principle, that all restraints upon trade are bad as being in violation of public policy unless they are natural and not unreasonable for the protection of the parties dealing legally with some subject-matter of contract, and that the principle is this; public policy requires that every man should be at liberty to work for himself, and should not be at liberty to deprive himself or the state of his labor, skill, or talent by any contract that he enters into.

On the other hand, public policy requires this; that where a man has by skill or any other means obtained something which he wants to sell he should be able to sell it in the most advantageous way in the market, and in order to enable him to sell it advantageously in the market it is necessary that he should be able to preclude himself from entering into competition with the purchaser, that then the same public policy which enables him to do that, does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation however restrictive it is, provided that restriction in the judgment of the court is not unreasonable, having regard to the subject-matter of the contract."

In Herreshoff v. Boutineau, 19 Atlantic Rept. 712, the supreme court of Rhode Island reviewed the English and American decisions on the subject, and rightly concluded that the rulings that contracts in general restraint of trade were void, were based, not on the universality of the covenants as to space, but upon their actual unreasonableness under the facts of the cases. The following extract from the opinion fully expresses the opinion of the court: "Courts should be slow to set aside as unreasonable a restriction which has formed a part of the consideration of a contract; yet, when it is a restriction upon individual and common rights, which only oppresses one party without benefiting the other, all courts agree that it should not be enforced. In determining the reasonableness of a contract, regard must be had to the nature and circumstances of the transaction. For example, if one has sold the good-will of a mercantile enterprise, receiving pay for it, upon an agreement not to engage in the same business in the same state, for a certain time, such a stipulation would stand upon quite a different footing from the similar stipulation of a mere servant in an ordinary local business. In many undertakings,

with modern methods of advertising and facilities for ordering by telegraph or mail, and sending goods by railroad or express, it would matter little whether one was located at Providence or Boston or some other place. In such cases a restriction embracing the state, or even a large territory, could not be said on that account to be unreasonable; for without it the seller might immediately destroy the value of what he sold and was paid for. But it is unreasonable to ask courts to enforce a greater restriction than is needed. So it has been uniformly held that restrictions which go too far are void."

The decision of the New York court of appeals in Diamond Match Company v. Roeber, 106 N. Y. 473, contains an exhaustive and intelligent discussion of the question. There the restraint extended over the United States, except the states of Nevada and Montana. The court upheld the contract as one only in partial restraint of trade, but in the discussion the court successfully answered all possible objections to contracts unlimited as to space, provided the facts and circumstances of the particular case justified such a restriction. The court said: "When the restraint is general, but at the same time is co-extensive only with the interest to be protected, and with the benefit meant to be conferred, there seems to be no good reason why, as between the parties, the contract is not as reasonable as when the interest is partial and there is a corresponding partial restraint. And is there any real public interest which necessarily condemns the one and not the other? It is an encouragement to industry and to enterprise in building up a trade, that a man shall be allowed to sell the good-will of the business and the fruits of his industry upon the best terms he can obtain. If his business extends over a continent, does public policy forbid his accompanying the sale with a stipulation for restraint co-extensive with the business which he sells? If such a contract is permitted, is the seller any more likely to become

a burden on the public than a man who having built up a local trade only, sells it, binding himself not to carry it on in the locality? Are the opportunities for employment and for the exercise of useful talents so shut up and hemmed in that the public is likely to lose a useful member of society in the one case and not in the other? Indeed, what public policy requires is often a vague and difficult inquiry. It is clear that public policy and the interests of society favor the utmost freedom of contract, within the law, and require that business transactions should not be trammelled by unnecessary restrictions. 'If,' said Sir George Jessell, in Printing Company v. Sampson (19 Eq. Cas. L. R. 462), 'there is one thing more than any other which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that contracts when entered into freely and voluntarily shall be held good and shall be enforced by courts of justice.' It has sometimes been suggested that the doctrine that contracts in general restraint of trade are void, is founded in part upon the policy of preventing monopolies, which are opposed to the liberty of the subject, and the granting of which by the king under claim of royal prerogative led to conflicts memorable in English history. But covenants of the character of the one now in question operate simply to prevent the covenantor from engaging in the business which he sells, so as to protect the purchaser in the enjoyment of what he has purchased. To the extent that the contract prevents the vendor from carrying on the particular trade, it deprives the community of any benefit it might derive from his entering into competition. But the business is open to all others, and there is little danger that the public will suffer harm from lack of persons to engage in a profitable industry. Such contracts do not create monopolies. They confer no special or exclusive privilege. If contracts in general restraint of trade, where the trade is general, are void as tend-

ing to monopolies, contracts in partial restraint where the trade is local, are subject to the same objection, because they deprive the local community of the services of the covenantor in the particular trade or calling, and prevent his becoming a competitor with the covenantee. We are not aware of any rule of law which makes the motive of the covenantee the test of the validity of such a contract. On the contrary we suppose a party may legally purchase the trade and business of another for the very purpose of preventing competition, and the validity of the contract, if supported by a consideration, will depend upon its reasonableness as between the parties."

In Gibbs v. Baltimore Gas Company, 130 U. S. 396-409, the supreme court of the United States had under discussion the ancient common-law rule as to the contracts in general restraint of trade. The court said: "The decision in Mitchell v. Reynolds, 1 P. Wms. 181; s. c., Smith's Leading Cases [7 Eng. Ed.], 407; [8 Am. Ed.] 756, is the foundation of the rule in relation to the invalidity of contracts in restraint of trade; but as it was made under a condition of things, and a state of society, different from those which now prevail, the rule laid down is not regarded as inflexible, and has been considerably modified. Public welfare is first considered and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained. The question is, whether, under the particular circumstances of the case and the nature of the particular contract involved in it, the contract is, or is not, unreasonable. Roussillon v. Rousillon, 14 Ch. D. 351; Leather Cloth Co. v. Lorsent, L. R. 9 Eq. 345." This ruling was affirmed in the more recent case of Fowle v. Park, 131 U. S. 88.

The above quotations are in accord with the recent utterances of the courts of other jurisdictions so far as my investigation has gone, and the intimation of our own su-

preme court are along the same lines.   Thus in Pelz v. Eich-
ele, 62 Mo. 171, the contract was that defendant would not
"enter into the manufacture of matches at this (city of St.
Louis) or any other place for the term of five years," etc.
The supreme court held that the contract was divisible and
decreed its enforcement as to the city of St. Louis, it appear-
ing that it was reasonable to that extent.   In further dis-
cussion of the question the court said:   "Contracts of this
character are not now regarded by the courts with so jealous
an eye as formerly, and it is not at all apparent that-any of
the mischievous consequences sought to be prevented by the
adoption of the early rule on this subject would ensue if the
entire contract in this case were held to be valid.

· The facts in the case of Presbury v. Fisherm, 18 Mo.
50, did not call for a decision of the question, but the court
remarked in substance that the doctrine of the common law
that contracts in general restraint of trade were void, was
regarded with less favor than formerly, because the reasons
in which it had its origin had in a measure ceased.

In Long v. Towl, 42 Mo. 545, Judge Baker, in deliver-
ing the opinion of the court stated that "a contract prohibit-
ing one of the parties from carrying on any specific trade or
business without limit as to time or place, is doubtless void."
This was an *obiter dictum*, for it was expressly stated in the
opinion that the covenant in question was "not a restriction
of trade according to any proper construction of the rule."

Believing as I do that a stipulation in a contract in gen-
eral restraint of trade does not afford an unrebuttable pre-
sumption of its unreasonableness, it follows that in my opin-
ion the judgment on the demurrer as to this branch of the
case can not be upheld on the doctrine of the early cases as
to the effect of such stipulations.

If the restriction in the contract is no larger or wider
than is necessary for the protection of plaintiff, then the
covenant is a reasonable one.   This is a matter of law, and

the remaining question on the demurrer is, are the aver-
ments in the bill sufficient to invoke the judgment of the
court as to this essential matter. To raise this question it
was necessary to aver that plaintiff's trade is co-extensive
with the United States, or that it is world-wide. The aver-
ments as to this are not full and explicit, but it is to be
fairly inferred that the pleader so intended to charge.
Under our statute (R. S. 1889, sec. 2074), and the decision
of the supreme court construing it (Stillwell v. Hamm, 97
Mo. 579), a pleading is not to be construed most strongly
against the pleader, but "its language should be taken in its
plain and ordinary meaning, and such an interpretation
given it as fairly appears to have been intended by its au-
thor." Now it is charged in the petition that "the business
of plaintiff is extensive;" that "at, and for some years prior
to, the time when plaintiff made the contract with defendant,
the commercial operations of the plaintiff included numerous
transactions for the sale of its manufactured drugs and
chemicals, not only with persons in the city of St. Louis, but
also in very many other parts of the United States of Amer-
ica, in a large number of the different states and territories
thereof, and in the Dominion of Canada, in the Republic of
Mexico, and in several of the countries of Europe, and of
Asia and of Australasia." * * * "The drugs and chem-
icals manufactured by plaintiff have for many years past
been extensively used in various parts of the United States
for compounding medicinal prescriptions for scientific exper-
iments, and in many other ways wherein drugs and chem-
icals of a high order of purity are required. Plaintiff be-
lieves that the said products of its manufactory enjoy a good
reputation for purity and efficiency in the drug trade
throughout the United States, and in said other countries
into which its business extends," etc. Adopting a liberal
construction of the pleading I think that it can be fairly said
that the plaintiff intended to charge and did in effect charge

that its trade extended substantially over the entire territory of the United States.

For the foregoing reasons I dissent from the conclusion reached by my associates.