### SEELEY *vs.* ENGELL.

It is entirely a matter of discretion in the court, on the trial of a cause, whether a witness shall be put upon his *voir dire*, or the oath in chief shall be administered.

The better and more approved practice now is to swear the witness in chief, and bring out the facts relied upon as showing his interest, either on direct or cross-examination.

The possession of a negotiable promissory note is *prima facie* evidence of good title in the holder; and, until some suspicion is cast upon the case, he is not called upon in any way to fortify his title by proof of a consideration paid, on the transfer to him.

In an action upon such a note, by the holder, the payee would be a competent witness for the plaintiff; notwithstanding it was transferred to the plaintiff after it became due, and there is no evidence that he paid value for it.

Accordingly *held*, that the *wife* of the payee might be examined as a witness for the holder.

*Brisbane* v. *Pratt*, (4 *Denio*, 63,) overruled.

An answer which alleges that the plaintiff " is not the lawful owner and holder of the note" described in the complaint, is insufficient to admit evidence that the plaintiff is not the owner or holder.

So, an answer which avers that the note sued on " was by mistake given for a greater sum than was due from the maker to the payee, to wit, a sum sufficient to cancel the balance claimed to be due on the said note," is insufficient to admit evidence to show a mistake in the amount; the defendant alleging nothing but a conclusion of law, without setting out the facts by which it is supported.

APPEAL by the defendant from a judgment entered upon the report of a referee. The action was brought against the defendant, as the maker of two promissory notes, the one bearing date January 24, 1849, by which the defendant, for value received, promised to pay Nehemiah Seeley or bearer, three days after date, with interest, the sum of $91.39, on which a payment of $58.32 was made by the defendant on the 28th of March, 1850. The other note was dated March 28, 1850, and was for the payment of $8.62 to S. Simmon or bearer, with interest, three days after date. The complaint alleged that the plaintiff was the lawful owner and holder of the notes, and that the defendant had not paid the same. The defendant's answer was as follows : " The defendant answers and denies, and says that it is untrue, as he is informed and believes, that the said plaintiff

Seeley v. Engell.

was at the time of the commencement of this action, or at any time thereafter, the lawful owner and holder of the two promissory notes described in said plaintiff's complaint; and the said defendant, in further answering the said complaint of the said plaintiff, denies, and says it is untrue that he is justly indebted to the said plaintiff therefor, as alleged in the plaintiff's complaint.

And the said defendant, in further answering the complaint of the said plaintiff, says that the said promissory note, to wit, that made payable to Nehemiah Seeley or bearer, dated January 24, 1849, for the payment of the sum of $91.39, and described in plaintiff's complaint, was received by the said plaintiff when the same was over due, as the defendant is informed and believes. And the defendant says and alleges the fact to be that, when the said note was made by the said defendant, the same was, by mistake, given for a greater sum than was due from the said defendant to the said Nehemiah Seeley, to wit, a sum sufficient to cancel the balance claimed to be due on said note, making said note, in part, without consideration, and therefore the defendant claims a deduction from the said note, equal to the balance claimed to be due thereon; wherefore the defendant demands judgment against the said plaintiff for costs of suit, &c."

The reply put in issue the allegations in the answer.

The cause was referred to a referee, who reported that on the hearing before him, the following facts were proved, viz: the making of the promissory notes set forth in the complaint, by the defendant; the payment of $58.32 upon the first note; that such notes, after they became due, were, for a valuable consideration, sold, transferred and delivered to the plaintiff; that he was, at the time of the commencement of this action, the owner and holder thereof, for a valuable consideration by him paid therefor; and that there remained due upon such notes $68.86. On the trial before the referee, after proving the execution of the notes, and the amount due thereon, the plaintiff's counsel called as a witness *Losina Seeley*. The defendant's counsel requested the plaintiff's counsel to state whether the witness called was or was not the wife of Nehemiah Seeley, the payee in note

No. 1. (the note for $91.39.)   The plaintiff's counsel refused so to do, and the defendant's counsel asked the referee to require the plaintiff to disclose whether she was or was not the wife of said Seeley; but the referee ruled that he could not require any such disclosure; to which ruling the defendant's counsel excepted. The defendant's counsel objected to the witness offered, as incompetent, and insisted that she was the wife of the real plaintiff in interest; and the defendant's counsel thereupon requested and moved the referee to administer to her on behalf of the defendant the preliminary oath, called the *voir dire*, that she might be examined thereon to ascertain whether she was disqualified as a witness for the plaintiff.   The plaintiff's counsel objected.   The referee ruled and decided that he would not administer such oath to her, but would swear her in chief; and if it appeared upon her examination that she was incompetent, he would strike her testimony out; to which ruling the counsel for the defendant excepted, and objected to her being sworn as a witness, except to answer such questions as should be put to her touching her competency. The referee overruled the objection and swore the witness in chief, to which the defendant's counsel excepted. The witness said: " I am the wife of Nehemiah Seeley." The counsel for the plaintiff handed note No. 1 to the witness, and asked her if she had ever seen that note before. The defendant's counsel objected, and objected to her testifying at all. The plaintiff offered to prove by this witness that Nehemiah Seeley, in April, 1851, sold and delivered note No. 1 to the plaintiff, and at the same time received from the plaintiff the full amount thereof, as the same purported to be due on the face of it. The defendant objected to the evidence offered, on the ground, that as the evidence stood, under the pleadings, Nehemiah Seeley, the husband of the witness, and the payee in note No. 1, was the real party in interest; and, therefore, neither he nor his wife was admissible to destroy such incompetency, or to prove facts to establish a cause of action. The court decided the witness to be competent; and the defendant's counsel excepted. The defendant offered, for the purpose of establishing the grounds of his objection, to prove that Nehemiah Seeley, the payee in note No.

Seeley *v.* Engell.

1, was the real owner of the note, and was so at the commencement of this suit; that this suit was brought for his sole benefit; for the purpose of rejecting the evidence offered by the plaintiff. The referee ruled he would not hear the evidence offered by the defendant at this stage of the proceedings, but would hear the evidence offered by the plaintiff, and afterwards would hear such evidence offered by the defendant. The defendant's counsel excepted to the ruling respecting the evidence offered by the defendant, and also to the receiving of the evidence offered by the plaintiff.

*Losina Seeley* further testified, that in April, 1851, Nehemiah Seeley purchased of the plaintiff a mortgage, executed by one John Countryman, and paid him therefor in promissory notes, of which the note for $91.39 was one. The other material portions of the testimony are referred to in the opinion of the court.

*P. Gridley*, for the plaintiff:

*F. Kernan*, for the defendant.

*By the Court*, BACON, J. This case comes before the court for the second time, on an appeal from a judgment rendered for the plaintiff upon the report of the referee. The questions now presented are somewhat different from those passed upon when the cause was sent back for a new trial. The struggle between the parties upon both trials has been to let in, or include, evidence touching the note of $91.39, which was payable to Nehemiah Seeley, or bearer, and which it was admitted by the pleadings was received by the plaintiff after its maturity. On the first hearing, the referee seems to have held that it was not necessary for the plaintiff to prove that the note was transferred to him for a valuable consideration. This the supreme court deemed to be erroneous, on the authority of the case of *Brisbane* v. *Pratt*, (4 *Denio*, 63,) and on this ground, and because the referee excluded certain evidence which tended to show that the note was given for the balance of a certain account, and by a mistake

therein, the note was given for too large a sum; the report was set aside and a new trial ordered. That trial having taken place before another referee, who has also reported in favor of the plaintiff, the defendant comes again to this court to ask that the errors which he considers have been committed upon this last hearing may be corrected.

The first question made by the defendant on the trial, arose at the time Losina Seeley was offered as a witness on the part of the plaintiff. Upon her being called, the defendant's counsel asked the plaintiff's counsel to state whether the witness was the wife of Nehemiah Seeley, the payee of the note of $91.39. This the plaintiff's counsel refused to do, and the defendant's counsel then asked the referee to require the plaintiff's counsel to disclose whether she was not the wife of said Seeley, but the referee ruled that he could not require any such disclosure. The defendant's counsel then objected to the witness as incompetent, and requested the referee to administer to her, on behalf of the defendant, the oath called the *voir dire*, for the purpose of testing her interest. To this an objection was interposed, and the referee declined to administer such oath, but decided to administer the oath in chief, and if on examination it appeared that she was incompetent, he would strike out her testimony. To this ruling an exception was duly taken, and the witness was then sworn in chief, and, in answer to the first question, stated that she was the wife of Nehemiah Seeley.

No error was committed by the referee in this ruling, for several reasons.

I. It is entirely a matter of discretion whether the preliminary oath as to interest, or the oath in chief, shall be administered. The rule was formerly held with somewhat more strictness, and cases may be found where a party has required a witness to be put upon his *voir dire*, and it has been accorded to him as a matter of right. But it is certain that in modern practice the rule has been greatly relaxed, and the whole matter left to the discretion of the court. And the better and more approved practice now is to swear the witness offered in chief, and bring out the facts sought to be established to prove the interest, on either direct or

cross-examination. Thus Phillipps lays down the rule: "The examination of a witness to discover his interest is frequently to the same effect as his examination in chief. It therefore saves time, and it is more convenient, that the witness should be sworn in chief in the first instance, and if it should afterwards appear in the progress of the examination, that he is interested, it will then be time to take the objection." (1 *Phil. Ev.* 267.) And this is the sensible rule, in accordance with which the referee decided.

II. No injury resulted to the defendant from the refusal to put the preliminary oath. The only inquiry the counsel of the defendant desired to have answered, was, whether the witness was the wife of Nehemiah Seeley, for it was upon the simple existence of this fact that he founded the right to exclude her testimony. Now this was the very first fact disclosed by her after she was sworn in chief. Upon the ground assumed by the defendant's counsel, he was then entitled to move, as he did, to exclude her testimony; and if he was right in the principle assumed by him, as the law of this case, she should have been excluded. The referee held her to be competent, to which the defendant's counsel excepted. This ruling was right, because,

III. We are prepared to hold that the principle under which it is claimed her testimony was incompetent, is not the law of the land. That principle, as maintained by the defendant's counsel is, that if a negotiable promissory note is transferred after maturity, and there is no proof of a transfer for value, the presumption of law is that it still belongs to the payee or assignor, and that it is sued by the holder as trustee for him. The result of this would be that Nehemiah Seeley, the payee of the note in question, being the real party in interest, could not be sworn by the plaintiff as a witness in the suit, and the witness offered being his wife, was consequently incompetent. This rule professes to be founded upon the authority of *Brisbane* v. *Pratt*, (4 *Denio*, 63.) In respect to this case, we have to remark, that it is opposed to the general current of antecedent authority, both in our own and the English courts, and professes to be founded mainly on the authority of *Paige* v. *Cagwin*, (7 *Hill*, 361,) which by

no means sustains it.   The general and the better doctrine is, that the possession·of the note is *prima facie* evidence of good title in the holder, and until some suspicion is cast upon the case, he is not called upon in any way to fortify his title, by proof of a consideration paid on the transfer.   And the very recent case of *James* v. *Chalmers,* decided in the court of appeals, (2 *Selden,* 209,) reaffirms this doctrine explicitly, and declares that " the case of *Brisbane* v. *Pratt* stands alone, and cannot be supported by authority or·principle."   It must hereafter be found in the index to some future volume of reports under the rapidly increasing head of cases doubted, denied, or overruled."   Under this view of the law, as we think, it must now be held Nehemiah Seeley would, at this stage of the case, have been a perfectly competent witness, and consequently the objection made to the witness Losina Seeley was untenable, and was properly overruled.   In the case of *James* v. *Chalmers,* above referred to, a former holder of the note, who had sold it after maturity, was introduced as a witness, and although the same objection was made as in this case, to his competency, he was sworn, and the court of appeals sustained the ruling of the referee admitting him.

On the examination of this witness, she clearly proved the fact of· the purchase and payment of the consideration of the note in question, by the plaintiff in the suit.   An objection was made by the defendant to the introduction of a list of ·the notes which were transferred to the plaintiff by Nehemiah Seeley, upon the purchase of a mortgage by him of the plaintiff, in which list the note in question was included.   This was collateral and secondary, and was introduced mainly for the purpose.of identification.   The most that can be said of it is perhaps that it was immaterial, but as the defendant's own witnesses subsequently proved a consideration upon the purchase, and the referee has proved the fact affirmatively, no possible injury resulted to the defendant from the introduction of the list.

On the part of the defendant, evidence was sought to be given by him, that the plaintiff was not the lawful holder and owner

Seeley *v.* Engell.

of the note. These offers were repeated in various forms, but substantially to the same effect, and the referee excluded the testimony offered, on the ground that the answer was insufficient to admit the evidence. Upon the authority of various cases cited on the argument, we think this ruling was right. (*See* 5 *Sand.* 646; 8 *How.* 273; 7 *Barb.* 482; 4 *How.* 202; 4 *Com.* 249.) The referee did hold and decide, however, that the defendant might show that the plaintiff never purchased or paid value for the notes, and several witnesses were sworn to establish this defence; and finally, after the defendant rested, the plaintiff waived all the objections made by him at that stage of the suit, when these objections were interposed and passed upon. The field was then entirely thrown open, and if the defendant did not choose to enter, and occupy, and improve, it may, we think, be fairly assumed, that he had exhausted all the means he possessed for profitable culture, and after this he could with no grace complain that he had suffered by any prior exclusion.

The last exception taken by the defendant was to the ruling of the referee, by which he excluded the evidence offered by the defendant, to prove that the note in question was by mistake given for a larger sum than it should have been. The ground of the ruling was that the answer was entirely insufficient to admit the evidence; and in this, we think, he was clearly right. Within the code and the decisions under it, the pleading was insufficient. (*See* 5 *How.* 14. 1 *Code Rep.* 91.) It alleges nothing but a conclusion of law, without setting out the facts by which it is supported. It was so adjudged by Mr. Justice Hubbard, in the opinion given when this cause was before the court upon the first appeal, and the pleading was pronounced by him clearly defective under the code. The defendant was then apprised of the defect. He sought no amendment, either by an application to the court, or upon the trial. He elected to stand upon it, and to, abide the consequences of it should it be found against him.

> " He staked his cause upon the cast,
> And he must take the hazard of the die."

Upon the whole, we are satisfied that no error has been committed by the referee, and that the case has been fairly disposed of upon the merits. A new trial is consequently denied.

[OSWEGO GENERAL TERM, April 3, 1854. *Hubbard, Pratt* and *Bacon,* Justices.]