## MALLINCKRODT CHEMICAL WORKS, Appellant, v. NEMNICH.

### Division Two, June 18, 1902.

1. **Appellate Practice:** DEMURRER: JUDGMENT: BILL OF EXCEPTIONS. Where a demurrer to a petition is sustained and judgment entered thereon, a bill of exceptions for the purpose of preserving the demurrer is unnecessary.

2. **Contract:** VIOLATION: PLEADING: LEGAL CONCLUSIONS. In a suit to restrain the violation of a contract by a former employee of plaintiff that for six years after leaving its employ he would not, within the United States, engage in selling, dealing in, or manufacturing, any of the articles manufactured, dealt in, or sold, by it, a petition alleging that defendant within such time "entered upon, and is engaged in, the manufacture and sale of chemicals, drugs, and other articles of the same kind and character as those manufactured, sold and dealt in by the plaintiff," and "that such acts on defendant's part are a breach of the obligation imposed by his agreement aforesaid," and "that in so doing he utilizes the information as to processes and customers acquired while in the plaintiff's employ," states merely the legal conclusions of the pleader, and is demurrable. Defendant was entitled to a statement of the constitutive facts which

Mallinckrodt Chemical Works v. Nemnich.

compose plaintiff's cause of action, if it had any, for this is the rule of our code. And equally as surely, such facts plaintiff did not set forth. The allegation quoted is simply the averment of a legal conclusion; not the statement of issuable facts; not, therefore, either traversable or demurrable, and is to be treated as no statement at all, and consequently obnoxious to attack by general demurrer. The allegation of a conclusion of law raises no issue, need not be denied, and its truth is not admitted by a demurrer to the complaint containing it. Under the authorities cited in the opinion, the clause aforesaid, being a mere legal conclusion and therefore wholly worthless, is to be treated as entirely eliminated from further consideration, and as though it had not been pleaded.

3. **Practice**: MAKING PLEADING DEFINITE AND CERTAIN: DUTY OF PARTY DRAWING PLEADING. Defendant was not required to move to have the pleading made more definite and certain. He might indeed have done this, but was not compelled to do so. The primary duty of making the pleading definite and certain is on the party drawing the pleading, and he can not, by his remissness, cast on his opponent the *onus* of doing what his own duty demands; a duty which consists in expressing his meaning clearly and unmistakably. This view is the one taken in New York, whence our code is derived.

4. **Contract**: RESTRAINT OF TRADE: INJUNCTION. Such contract is one in restraint of trade, which equity will not enforce by injunction.

Transferred from St. Louis Court of Appeals.

COURT OF APPEALS JUDGMENT AFFIRMED.

*McKeighan & Watts* and *Shepard Barclay* for appellant.

*Lubke & Muench* for respondent.

SHERWOOD, P. J.—This proceeding, one in equity, sought to enjoin defendant from carrying on the manufacture of chemicals, drugs, etc., in the States of Missouri and Illinois.

The petition and accompanying contract, are as follows:

"The Mallinckrodt Chemical Works as plaintiff, by the undersigned, its attorneys, states that it is a corporation under the laws of Missouri. Plaintiff for more than ten years last past has been, and it is now, engaged in the manufacture and

sale of drugs and chemicals, and it has its principal office and manufactory in the city of St. Louis. The business of plaintiff is extensive. At, and for some years prior to, the time when plaintiff made the contract with defendant (hereinafter mentioned), the commercial operations of the plaintiff included numerous transactions for the sale of its manufactured drugs and chemicals, not only with persons in the city of St. Louis, but also in very many other parts of the United States of America, in a large number of the different States and Territories thereof, and in the Dominion of Canada, in the Republic of Mexico, and in several of the countries of Europe, and of Asia and of Australia. Plaintiff's business of selling drugs and chemicals is still as extensive as when said contract was made, and is enlarging in extent each year.

"Plaintiff's business of manufacturing drugs and chemicals is, moreover, to a great degree scientific in its nature. It requires a large measure of skill in the adoption and use of various processes for the manufacture of the drugs and chemicals sold by plaintiff as aforesaid, and many of the processes followed by its employees in the plaintiff's said manufactory are the products of discoveries, inventions, and improvements by the officers and employees of plaintiff, belonging to the plaintiff, and constitute valuable property of plaintiff.

"The defendant, Rudolph Nemnich, and said corporation, June 15, 1893, entered into a contract (which was signed by both parties), in the following terms:

" 'These articles of agreement entered into this fifteenth day of June, 1893, by and between the Mallinckrodt Chemical Works, a corporation, of the one part, and Rudolph Nemnich of the other part, witnesseth, that they, the said parties, for the considerations and the mutual covenants hereinafter mentioned, agree and covenant to and with each other in manner following, to-wit:

" 'First. That the said corporation will, for and during

the space of five years, to commence on the first day of January, 1893, employ said Rudolph Nemnich as chemist in its factories and to do such other services therein as he will be directed to do by the officers of said corporation, and that said Rudolph Nemnich shall and will during said term diligently and faithfully serve in the employ of said corporation as such chemist, or as directed to do by its officers, and that he will devote all his time, skill and industry to the business of said corporation.

"'Second. That said Rudolph Nemnich shall at all times during said term fulfill and keep the lawful and reasonable commands and directions of said corporation and its officers, and that said Rudolph Nemnich shall, neither during said term nor at any time afterwards, disclose the same or the secrets of his employment, or any of the processes, plans, operations, business dealings, or transactions of said corporation to any person or persons whatsoever.

"'Third. That all the discoveries, inventions, and improvements which said Rudolph Nemnich during said term may use, apply, or make in any chemicals, pharmaceutical preparations, medicines, compounds, machinery, apparatus, or articles of any kind whatsoever, or in the several processes of manufacturing or compounding the same, whether they are patentable or unpatentable, shall become, be, and remain the property of said corporation; and said Rudolph Nemnich hereby and herewith sells, assigns, and transfers to the said corporation the full and exclusive right to use and apply the same, said corporation to have the full and exclusive right to obtain and take out letters patent thereon.

"'Fourth. That as and for a consideration for such services to be done, observed, and performed by said Rudolph Nemnich, as aforesaid, and as his annual salary therefor, said corporation will pay him the sum of one thousand dollars, together with an increase in his salary of two hundred dollars for each successive year during said term, over the preceding year.

" 'Fifth. That if said Rudolph Nemnich shall be absent from his said employment by reason of sickness, disability, or other causes for periods exceeding three weeks at a time, the said corporation shall be at liberty to make deductions from his annual salary in proportion to his time of absence.

" 'Sixth. That he, the said Rudolph Nemnich, agrees and covenants and herewith binds himself that, for and within the period of six years after he has left the service of said corporation, and within the territory of the United States, he, the said Rudolph Nemnich, will not, in any manner or form, directly or indirectly, either by himself or with others, engage in the selling, dealing or manufacture of any of the articles now or then being manufactured, sold, or dealt in by said Mallinckrodt Chemical Works.

" 'Seventh. That said Rudolph Nemnich shall at no time, whether during said term of employment or afterwards, directly or indirectly, with and by himself, or with and to any other person, firm or corporation, utilize, impart, or apply the knowledge or information acquired by him during his said employment by said Mallinckrodt Chemical Works regarding any secrets, discoveries, inventions, or improvements, in making, using, applying, or compounding, any chemicals, pharmaceutical preparations, medicines, compounds, machinery, or apparatus, or regarding any discoveries, inventions, improvements, or secrets in the processes, art and science of manufacturing and compounding said articles, it being well understood that all such discoveries, inventions, improvements, or secrets made or acquired by said Rudolph Nemnich during his said employment are and shall always remain the exclusive property of said Mallinckrodt Chemical Works.

" 'In witness whereof, said Mallinckrodt Chemical Works has caused these presents to be signed by its president, and its common corporate seal to be hereto affixed, and said Rudolph Nemnich has signed and sealed these presents at St. Louis, Missouri, this fifteenth day of June, 1893, in duplicate.'

"The said defendant, at the time of making said contract, was sojourning in the city of St. Louis, Missouri; but, nevertheless, was then a citizen of the empire of Germany. Prior to the date of said contract he had come to the State of Missouri from Wiesbaden, Germany. He had practiced his profession as a chemist in Germany, his native country; and both then and at the present time defendant had an ample and extensive field in which his profession as chemist might be practiced in that country as well as in many other parts of the civilized world. Factories for the manufacture and sale of chemicals and drugs exist now (and have for more than ten years last past) in many parts of Great Britain, France, Germany, Austria, Italy, Belgium, and in other countries; and in said countries defendant might now find, and at any time in the past ten years might have found, professional employment as chemist, if he desired, at reasonable and remunerative terms of compensation for such services as chemist.

"The drugs and chemicals manufactured by plaintiff have for many years past been extensively used in various parts of the United States (and in the other countries in which plaintiff does business, as hereinbefore mentioned) for compounding medicinal prescriptions for scientific experiments, and in many other ways wherein drugs and chemicals of a high order of purity are required. Plaintiff believes that the said products of its manufactory enjoy a good reputation for purity and efficiency in the drug trade throughout the United States and in said other countries into which its business extends; and plaintiff charges the fact so to be.

"Defendant went into the service of plaintiff in its manufactory according to said contract, and remained in the employ of plaintiff under said contract until January, 1898, when his term of said employment by said plaintiff expired; and he took and enjoyed all the fruits of its provisions according to its terms until said contract had been fully complied with on the part of the plaintiff. After the expiration of said

term, defendant left the service of plaintiff, and at a more recent date heretofore, in the year 1898, in the city of St. Louis, defendant entered upon and is now engaged in the manufacture and sale of chemicals, drugs and other articles of the same kind and character as those manufactured, sold and dealt in by the plaintiff at the present time (as well as dealt in at the time when said contract was entered into); that said acts on defendant's part are a breach of the obligation imposed by his agreement aforesaid as part of the said contract.

"During defendant's stay in plaintiff's service he had full and free access to the working departments of plaintiff's manufactory, and acquired knowledge of many of the processes of manufacture in use by plaintiff and its employees for the manufacture of drugs and chemicals. Defendant during said service also obtained information of the name of many of plaintiff's regular customers, and of persons who purchased drugs and chemicals of plaintiff in various sections and States of the United States. [Defendant in the manufacture and sale of chemicals and drugs (as aforesaid) is utilizing and applying for his own use the said knowledge and information so acquired and obtained by him while in plaintiff's employ.]

"It would be against equity for defendant to take advantage of the information gained by him while in plaintiff's employment under the aforesaid agreement, or to carry forward the business of manufacturing drugs and chemicals on which he has embarked, in competition with plaintiff, his said former employer. Defendant's said acts are contrary to equity and good conscience.

"Plaintiff asserts that no remedy that could lawfully be obtained by the recovery of damages of defendant would be adequate or efficient to redress the said breach of said agreement, which said breach continues from day to day.

"Plaintiff therefore prays that defendant be perpetually restrained and enjoined from further manufacturing in the States of Missouri or Illinois, any drugs and chemicals, now

or hereafter manufactured by plaintiff, until January 1, in the year 1904; and plaintiff prays for such further relief as may be just."

To this petition defendant filed the following demurrer:

"Now comes the defendant herein and demurs to the amended petition of the plaintiff herein filed, and for grounds of said demurrer assigns:

"First. That said amended petition, likewise fails to set forth facts sufficient to constitute a cause of action or ground of relief against this defendant.

"Second. Because the contract fully set forth in said amended petition, so far as it attempts to restrain this defendant in the exercise of his profession in the entire United States, is contrary to public policy and void,

"Third. Because there is no equity in said bill.

"Wherefore," etc.

The petition was adjudged insufficient, and plaintiff declining to plead further, judgment went on this demurrer. This demurrer has been carefully *preserved in a bill of exceptions filed for that purpose.* Why this was done is passing strange, seeing that a demurrer has the faculty of being a *self-preserver.* [Spears v. Bond, 79 Mo. 467; Hannah v. Hannah, 109 Mo. 236; State ex rel. v. Campbell, 120 Mo. 396; Thorp v. Miller, 137 Mo. 231; Benton Co. v. Morgan, 163 Mo. 661.]

But information of these rulings, indeed of the fundamental and familiar rule of practice which they embody and announce, has not as yet, perhaps, reached *urban latitudes.* The first clause set forth is a general demurrer, and this challenges the sufficiency of the petition in its totality; that is, up one side and down another. The petition will now be examined with the view to ascertain the correctness of this general challenge.

The sixth paragraph of the contract is the one on which plaintiff relies for relief, as is apparent from its petition; that

paragraph being as follows: "Sixth. That, he, the said Rudolph Nemnich, agrees and covenants and herewith binds himself that, for and within the period of six years after he has left the service of said corporation, and within the territory of the United States, he, the said Rudolph Nemnich, will not, in any manner or form, directly or indirectly, either by himself or with others, engage in the selling, dealing or manufacture of any of the articles now or then being manufactured, sold or dealt in by said Mallinckrodt Chemical Works."

Regarding such paragraph, the allegations of the petition are: "Defendant went into the service of plaintiff in its manufactory according to said contract, and remained in the employ of plaintiff under said contract until January, 1898, when his term of said employment by said plaintiff expired; and he took and enjoyed all the fruits of its provisions according to its terms until said contract had been fully complied with on the part of plaintiff. After the expiration of said term, defendant left the service of plaintiff, and at a more recent date heretofore, in the year 1898, in the city of St. Louis, defendant entered upon and is now engaged in the manufacture and sale of chemicals, drugs and other articles of the same kind and character as those manufactured, sold and dealt in by the plaintiff at the present time (as well as dealt in at the time when said contract was entered into); that said acts on defendant's part are a breach of the obligation imposed by his agreement aforesaid as part of the said contract.

"During defendant's stay in plaintiff's service he had full and free access to the working departments of plaintiff's manufactory, and acquired knowledge of many of the processes of manufacture in use by plaintiff and its employees for the manufacture of drugs and chemicals. Defendant during said service also obtained information of the names of many of plaintiff's regular customers, and of persons who purchased drugs and chemicals of plaintiff in various sections and states of the United States. Defendant in the manufacture and sale

of chemicals and drugs (as aforesaid) is utilizing and apply-ing for his own use the said knowledge and information so acquired and obtained by him while in plaintiff's employ."

Of these allegations of the petition it is observable that the last clause of it as above quoted charges that:   "Defendant in the manufacture and sale of chemicals and drugs (as afore-said) is utilizing and applying for his own use the said knowl-edge and information so acquired and obtained by him while in plaintiff's employ."

In *what way* is defendant *utilizing and applying* for his own use the knowledge, etc. ?.  *What are the facts?*   Surely defendant was entitled to a statement of the *constitutive facts* which compose plaintiff's cause of action, if it had any, for this is the rule of our code.   [Pier v. Heinrichoffen, 52 Mo. 333.]   And equally as surely, such facts plaintiff did not set forth.   The allegation quoted is simply the averment of a *legal conclusion;* not the statement of *issuable facts;* not, therefore, either *traversable or demurrable,* and is to be treated as *no statement at all,* and consequently obnoxious to attack by *general* demurrer.   [Bliss Code Plead. (3 Ed.), sec. 413, and note; Ib. secs. 210, 211, 212, 213; Craft v, Thompson, 51 N. H. loc. cit. 540; McKinzie v. Mathews, 59 Mo. loc. cit. 102; Cooper v. French, 52 Iowa 531.]

*"The allegation of a conclusion of law raises no issue, need not be denied, and its truth is not admitted by a demurrer to the complaint containing it."*   [Kittinger v. Buffalo Traction Co., 54 N. E. 1081; see also, 12 Enc. Pl. and Prac. 1022, et seq.; Institute v. Bitter, 87 N. Y. 250; Hoester v. Sammelmann, 101 Mo. loc. cit. 624.]

Under these authorities, the clause being discussed being a mere legal conclusion and therefore wholly worthless, is entirely eliminated from further consideration, and it is as though it had not been pleaded.

Nor will it do to say that defendant should have moved to have made the pleading more definite and certain.   He

might indeed have done this, but was not compelled to do so. The *primary* duty of making the pleading definite and certain is on the party drawing the pleading, and he can not, by his remissness, cast on his opponent the *onus* of doing what his own duty demands; a duty which consists in expressing his meaning clearly and unmistakably. This view is the one taken in New York, whence our code is derived. [Snyder v. Free, 114 Mo. 360, citing Clark v. Dillon, 97 N. Y. 370.]

And in New York it has been ruled that section 519 of this code in relation to a liberal construction of pleadings with the view to substantial justice between the parties, extends only to *"matters of form"* and does not "apply to the fundamental requirements" of a good pleading. [Clark v. Dillon, supra, and cas. cit. To the like effect see Young v. Schofield, 132 Mo. 650; Boles v. Bennington, 136 Mo. 522.]

With the clause aforesaid eliminated, nothing remains for consideration of the last quoted portion, except the residue or the first paragraph of such quotation, which relates to defendant's engaging in the manufacture and sale of chemicals, drugs, etc., of the same kind and character, etc., etc. But this also is but the *conclusion of the pleader, a bare legal conclusion,* unsupported by the allegation of *a single fact.* It would be impossible for defendant to traverse such an allegation, except in terms equally vague and vexatiously general to deny that he "is now engaged in the manufacture and sale of chemicals, drugs, etc., of the same kind and character, etc., etc." But this sort of answer would raise no issue for a jury to try, or to base a verdict upon. *Facts* should have been stated which would have enabled the courts to have seen from reading the allegations of the petition that defendant was brought within the terms of the contract and consequently within the breaches thereof. In other words, *what* particular drug, chemicals, etc., were being manufactured by defendant should have been set forth in the petition, in order for defendant to have had notice and opportunity to traverse the

allegations of the petition, by alleging that the drugs, chemicals, etc., he was engaged in manufacturing were not those embraced within the terms of the contract, or the allegations of the petition. In no other way could the facts be presented, so as to raise an issue for a jury to try, or for a court of equity to grant relief upon. [See above-cited authorities, and Cooper v. French, 52 Iowa 531; Seeley v. Engell, 17 Barb. 530.]

But apart from considerations of pleading, the contract as to its sixth paragraph is not such an one as a court of equity will specifically enforce by its injunctive process restraining defendant from violating its terms and provisions. The reasons for this view are well stated in an opinion by BLAND, P. J., of the St. Louis Court of Appeals (Mallinckrodt Chem. Wks. v. Nemnich, 83 Mo. App. 6), to which opinion reference is hereby made.

As to that portion of the contract wherein defendant is prohibited from imparting the "knowledge or information acquired by him during his said employment," etc., there is no allegation in the petition that defendant was imparting, or was about to impart, such knowledge, etc., etc. This being the case, no relief could be had on that score in consequence of the lack of such necessary allegation. Nor is the complexion of this case at all altered because *some of the authorities* cited in the dissenting opinion in the 83 Mo. App. supra, state that it would be *impossible to carry on a particular business, without imparting a knowledge* of the secret processes of such business. This statement of the law may possibly be correct, but what does that amount to, when, as here, there is no allegation in the petition that such would be the effect of the conducting of such business?

For these reasons we affirm the judgment of the St. Louis Court of Appeals, from which court this cause, on the dissent of one of its members, was transferred to this court. All concur.