Elbert **MONTGOMERY** and **H. P. Mont-**
**gomery, Respondents,**

v.

**O. K. GETTY, Appellant.**

No. 7371.

Springfield Court of Appeals.

Missouri.

Nov. 3, 1955.

J. W. Grossenheider, Lebanon, Claude T. Wood, Richland, for appellant.

Fields & Low, John A. Honssinger, John F. Low, Lebanon, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment in favor of plaintiffs and against defendant in a declaratory judgment action rendered in the Circuit Court of Laclede County, Missouri.

The action is based upon a written contract of sale whereby defendant sold to plaintiffs his one-half interest in the Getty Amusement Company, a partnership business owned and operated by defendant and one, S. R. Sutter. The contract was dated September 15, 1952, and contained the following agreement:

"The seller agrees that he will not enter into the amusement device business, such as the one that he is now selling, that will compete with this said business for a period of three years from the date of this contract."

It alleged that at the time the contract of sale was made, defendant and Sutter, a co-partnership, were engaged in the amusement device business in Laclede and adjoining counties, and that it was the intent of the parties, under the terms of the contract, that defendant would not, for a period of three years from the date thereof, compete in any way with the amusement device business sold to plaintiffs, in Laclede County, Missouri, and the adjoining counties thereto; that defendant violated the terms of this contract by reentering the business in said trade territory.

The amended prayer of the petition asked that the court declare valid the provisions of the contract restricting defendant from engaging in the amusement device business for a period of three years; that defendant violated the terms thereof and that he be enjoined from engaging in such business in Laclede and adjoining counties for three years from the date of the contract,

and for such other orders as to the court may seem proper.

The answer is a general denial.

The facts briefly stated are: Prior to September 15, 1952, defendant and S. R. Sutter owned and operated the Getty Amusement Company, a co-partnership, engaged in installing music and pin bill machines with customers in various businesses, restaurants and cafes in Laclede and adjoining counties, on commissions.

Elbert Montgomery, plaintiff, testified that at the time plaintiffs purchased defendant's interest in the Getty Amusement Company it had machines in Laclede, Pulaski, Douglas, Dallas, Camden and Webster counties. When asked about Wright County he gave this answer: "A. I don't believe we had any in Wright County". He stated the bulk of the machines were in Lebanon.

Defendant, O. K. Getty, testified that at the time of the sale to plaintiffs, in 1952, the major part of the business of the Getty Amusement Company was in Laclede County, at least fifty per cent. He gave this testimony:

"Q. Would you tell me, as of that date, bearing that date in mind, what other counties did you do business in? A. Well, mostly in adjoining counties. I don't think we had anything in Wright County. In other words we had Pulaski, Dallas, Marshfield,—what county is that in?

"Q. Webster. A. Webster County.

"Q. Any in Camden? A. Yes, I believe there was in Camden County.

"Q. In other words, as of September, 1952 you and Mr. Sutter had been doing business in Laclede and in Pulaski, Webster and Camden Counties? A. That's right."

Sylvester Sutter testified for plaintiffs that he was a partner in the Getty Amusement Company. He was asked where this business operated and gave this answer: "A. It operated in Laclede and surrounding counties.

"Q. Where was the majority of the business? A. Laclede County.

"Q. What other counties did it operate in? A. Well, in Dallas and Webster, Camden and Pulaski."

At the time the sales contract was made, September 15, 1952, there was another contract of sale between the parties wherein plaintiffs conveyed to defendant their interest in their tractor-trailer business located in Kansas City. The evidence shows that there were considerable conversations carried on between the parties as to the terms of these contracts prior to the execution thereof; that notes of the terms of the sales were transferred to an attorney who was instructed to prepare the sales contract; that during the preparation of the contract the parties agreed that the restriction clause, set out in the petition, be inserted in each of these sales contracts, i. e., that each of the parties agreed not to re-enter the field of business conveyed for a period of three years.

It is in evidence that Sutter operated the business purchased by plaintiffs and that defendant knew this was the method by which the business was to be handled; that the business was so operated from September, 1952, to about the first of January, 1953, when a consolidation was had with competitors, Bell and Talbot, in the same business, and the name changed to "United Amusement Company"; that plaintiffs invested more money in the new business than they had in the Getty Amusement Company, but obtained only a one-fourth share thereof. The evidence on the part of plaintiffs is that a writing was entered into but never signed; that they removed from the office and trucks the name "Getty Amusement Company", but continued to operate both businesses, maintained a bank account and contracts with customers, kept the same telephone number and continued to do business in both names.

In defendant's opening statement he said: "* * * that Mr. Getty, who was then in Kansas City and disposing of the business which he had purchased from the Montgomerys, was contacted by a former em-

ploye of the company and that this employe requested that Mr. Getty come back down and help him organize a corporation to go "in the amusement device business because a lot of his customers had been complaining that they were not getting the service that they were entitled to and that they felt there should be free competition here in this area, and that Mr. Getty consulted with his Kansas City attorney, then he came back down here and had a conference with Mr. Stickley, and that in fact, as Mr. Low has already stated, a corporation was formed. * * *"

In this statement he said that Mr. Stickley was President and defendant and his wife were stockholders; that defendant was vice-president and Mrs. Getty was secretary-treasurer; that the corporation entered into the amusement business and that Getty worked with the business as employee.

We think it is undisputed that the corporation had 6 shares of stock, 1 owned by Getty, 2 by Mrs. Getty and 3 by Stickley; that Getty solicited business, used his trucks in hauling the coin machines out to customers within the trade territory of the Getty Amusement Company and in competition therewith. It shows most of the business done by the corporation was in Laclede County. Defendant testified that from May, 1953, until now he had been actively soliciting business in Laclede and adjoining counties.

From the record testimony we are of the opinion that Getty was the controlling and moving power back of the corporation; that he and his wife operated the business from their home.

The contract of sale was offered in evidence containing the restriction clause as set out in plaintiff's petition.

The court's decree in part is as follows:

"* * * and the court finds that the provision in the contract mentioned in plaintiffs' petition and introduced in evidence providing as follows: 'The seller agrees that he will not enter into the amusement device business, such as the one that he is now selling, that will compete with this

said business for a period of three years from the date of this contract.', is a legal, valid and binding provision and that defendant has violated said provision and is presently violating said provision and the court further finds that defendant should be prohibited, restricted and enjoined from engaging in the amusement device business, competing with plaintiffs' business, in Laclede County, Missouri, and counties adjoining thereto for a period of three years from and after September 15, 1952.

"It is therefore ordered, adjudged and decreed * * * that defendant has violated said provision and is presently violating said provision and the defendant is hereby prohibited, restricted and enjoined from engaging in the amusement device business, competing with plaintiffs' business, in Laclede County, Missouri, and counties adjoining thereto, for a period of three years from and after September 15, 1952, and all costs of the case are assessed against the defendant and execution shall issue therefor."

Appellant's first allegation of error is that the language of the restricted covenant shows upon its face that it is void because it is against public policy and in restraint of trade.

The law determining this issue is well settled. The rule is well stated in Mallinckrodt Chemical Works v. Nemnich, 83 Mo. App. 6, 14:

■ ".* * * The general doctrine is that agreements in restriction of trade will be upheld when the restriction does not go beyond some particular locality, is founded on a sufficient consideration, and is limited as to time, place and person. * * *"

Hessel v. Hill, Mo.App., 38 S.W.2d 490, decided by the Kansas City Court of Appeals, in 1931, passed upon a similar state of facts as in the instant case. The defendant sold his undertaking business in Liberty, Missouri, to plaintiff and the real estate used therewith and in the written contract covenanted and agreed not to re-enter the undertaking business in Liberty

or within a radius of ten miles of said city for a period of ten years, without the consent of plaintiff. He breached this provision of the contract by going into the territory so designated and doing undertaking business. The court in passing upon the validity of this restrictive clause, 38 S.W.2d on page 492 of the opinion, stated:

"* * * We think it obvious that the plaintiff purchased and defendant sold not only the physical assets but the good will of the business, together with defendant's right of competition, to the full extent of the territory named. The consideration paid, the character of the business, the situation of the parties, their manifest intention, and the express language of the covenant lead only to this conclusion. It was the evident purpose of the restrictive clause to protect the purchaser from competition in the business which he was buying. It is worthy of note that by the express terms of the contract plaintiff purchased, and defendant sold, 'his undertaking business.' Defendant agreed he would not re-enter said business within a stated time and area. The agreement not to re-enter the undertaking business is a covenant which forbids defendant to re-engage in or pursue the vocation of an undertaker, and is not limited to the restricted meaning of re-establishing or re-opening an office or place of business within the prescribed limits. * * *"

The Supreme Court in Dean v. Monteil, 361 Mo. 1204, 239 S.W.2d 337, cited by appellant, in passing upon a restrictive clause limiting the use of the fee in real estate, stated the law thus on page 340 of the opinion:

"'This class of contracts is always regarded with suspicion by the courts, as their effect usually is to create a monopoly, and before any one of them will be upheld, it should clearly appear that no monopoly is created by it; that its enforcement will not prejudice the public; that it is reasonable as to time, space and person, not oppressive or injurious, and that the contract is founded on a good

consideration, and that its enforcement will be useful and beneficial to the promisee.' This doctrine was approved by this court in the same case. See Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388, 69 S.W. 355, loc. cit. 358, * * *".

The same issue was raised in Kreger Glass Co. v. Kreger, Mo.App., 49 S.W.2d 260, 264. This was an equity action to restrain the violation of a restrictive clause. Plaintiff purchased the corporate business known as the Kreger Glass Company in Kansas City and the good will and name of the company. The corporation, Ben Kreger and Julius Kreger were parties to the contract of sale. The parties owned all the stock in the company. As an inducement for the sale, the company and the Kregers agreed not to engage as individuals, or in association, with others, or as stockholders, employees or officers of a corporation in the business of handling at retail or wholesale, the sale of glass in any form or for any use within a radius of twenty-five miles of Kansas City. On page 264 of 49 S.W.2d the court stated:

"Finally, it is contended that the contract is in restraint of trade, and it is argued in effect that defendants should not be required to comply with its provisions because the restrictive covenant is unreasonable as to time, space, and person; that it is unnecessary for the protection of the plaintiff; that it is oppressive and injurious to defendants; and that it does not appear from the evidence that the trade or business sought to be protected is coextensive with the restricted area. The contract was not rendered unenforceable in equity on account of any of the reasons assigned. It is not an unlawful restraint of trade. Defendants had the right to sell the good will of their business and the power to exclude their own activity from competition with the vendee. The interest of the public was not involved to an extent that would prohibit such a transaction. It did not create a monopoly; there were other competitors. * * *"

17 C.J.S. Contracts, § 247, p. 630, states this law:

"Each case in which the question of reasonableness of restraint arises must be determined according to its own particular facts, and the subject matter, the situation of the parties, and the circumstances should be considered, the nature of the business restrained being as important a consideration as the elements of time and place. A restraint to be reasonable must be such only as to afford a fair protection to the interests of the party in favor of whom it is given and not so large as to interfere with the interests of the public, or impose undue hardship on the person restricted. Subject to this qualification it may extend to all the territory in which the business has been carried on or wherein the covenantee's trade is likely to go, * * *."

The other cases cited by appellant under this allegation follow the same rule of law as herein set out.

Covenants of the kind herein involved being in restraint of trade, were first regarded by the courts as contrary to public policy and invalid. At that time such restraints worked injury to the public by depriving it of the industry to which the covenantor was best suited and because it fostered monopoly, prevented competition and tended to raise prices. But modern day conditions have done away with all of these reasons and the attitude of the court has changed and the importance of requiring persons to abide by their contract has assumed certain enlargements. Now the law is that reasonableness of the restraint must be determined according to the particular facts in each case taking into consideration the subject matter, the situation of the parties, the nature of the business restrained, and the extent of the restraint with reference to time and space. It is generally held that restraint must be qualified as to time and space, and not greater than it requires for the protection of the purpose for whose benefit it is imposed. Renwood Food

Products, Inc. v. Schaefer, 240 Mo.App. 939, 223 S.W.2d 144.

■ Following the law as declared in the authorities cited, we think that respondents purchased not only the assets of the Getty Amusement Company but the good will of the business, together with appellant's right of competition to the full extent of the territory named. The consideration paid, the character of the business, the situation of the parties, their manifest intention, and express language of the covenant leads only to this conclusion. It clearly appears from the evidence that under the particular facts in the instant case no monopoly is created and that the enforcement will not prejudice the public; that it is reasonable as to time, space and persons, not oppressive or injurious to appellant and that its enforcement will be useful and beneficial to respondents. We find there is no merit in this allegation of error.

■ The second allegation of error is that the court erred in declaring only that the restrictive covenant was a legal, valid and binding provision and then giving coercive relief by enjoining appellant from engaging in the amusement device business competing with respondents' business in Laclede and adjoining counties. It is contended that injunctive relief is not proper in a declaratory judgment action except to supplement a declaration sought in the given case.

Appellant cites Section 527.080 RSMo 1949, V.A.M.S., under this assignment. This section merely provides that after the court has determined the rights by declaratory judgment further relief based upon such judgment may be granted when necessary or proper.

Union National Bank v. Jessell, 358 Mo. 467, 215 S.W.2d 474, 476, cited by appellant, declares the law:

"' * * * It is generally held, under statutes containing provisions of this kind, that declaratory and coercive relief may be combined in the same proceeding—that both declaratory and coercive or executory relief may be sought and granted in a single action.' Annotation 155 A.L.R. 501, 503. Accordingly it has become accepted that a declaratory judgment may be supplemented by an injunction or a decree of specific performance. * * *"

We think this holding of the Supreme Court fully sustains the action of the trial court and that there is no merit in this allegation of error. State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S.W.2d 25.

■ Likewise, we hold that appellant's contention that the evidence is insufficient to sustain the decree and that the trial court attempted to rewrite the contract of the parties is without merit.

■ We try the case de novo and pass upon both the law and the evidence giving due deference to the findings of the trial court upon the credibility and weight of the testimony. We find that the judgment of the trial court is fully supported by the evidence.

Judgment affirmed.

STONE and RUARK, JJ., concur.