JOSEPH F. HICKEY, T. J. HARGADON AND GUS BISTON, BOARD OF AGENTS OF MOORLANDS ADDITION, APPELLANTS, v. PAUL DANNA AND ROSE DANNA, HIS WIFE, INDIVIDUALLY AND AS COPARTNERS DOING BUSINESS AS PAUL DANNA AND SON, RESPONDENTS.—178 S. W. (2d) 764.

St. Louis Court of Appeals. Opinion filed May 15, 1945.

Appellant's Motion for Rehearing Overruled June 12, 1945.

Petition for Certiorari Denied September 4, 1945.

*Taylor R. Young* and *Alvin Goldman* for appellants.

*Louis L. Hicks* for respondents.

BENNICK, C.—This is a suit to enjoin the alleged violation of a restriction against the carrying on of any business in Moorlands Addition, which is a private residential subdivision within the City of Clayton in St. Louis County.

The plaintiffs are the three individuals who compose the board of agents for the owners of the lots in the addition, and they bring this suit by virtue of the authority conferred upon them as agents to enforce the covenants, conditions, and restrictions contained in an indenture which was duly executed and recorded at the time of the laying out of the subdivision.

Moorlands Addition is bounded on the north by Wydown Boulevard, on the south by Clayton Road, on the east by Audubon Drive, and on the west by the dividing line between Hanley Road and Westwood Boulevard. The portion of the tract lying east of Glen Ridge Avenue is reserved for single dwellings, while the portion lying west of Glen Ridge Avenue is wholly given over to rental property. There are in all 429 lots in the addition, which are owned by 300 individual lot owners, some of whom reside in the addition, while others do not. At the time of the trial there were 900 families residing in the entire area.

As has already been indicated, the addition was originally planned and developed as a private residential subdivision, with the use of the lots made subject to numerous conditions and restrictions, among which was a restriction that "no business shall be carried on . . . in said tract of land".

The named defendants are Paul Danna and Rose Danna, his wife, who are sued both individually and as copartners doing business as Paul Danna and Son. Actually Rose Danna has no part in the business; and the whole controversy is with her husband, Paul Danna, who had admittedly been driving into Moorlands Addition for more than a year before the trial below.

Danna is a hawker or peddler of fresh fruits and vegetables, which he buys early each morning from commission houses in the City of St. Louis, and then promptly sells and delivers to individual customers residing on his route. He conducts his business from a light Ford truck which is equipped with a special body for carrying his produce; and he only operates in those communities where he has established customers who may be expected to buy with some degree of regularity. He does not cry his wares, but merely calls at the homes of his different customers, and if they have orders to give, he takes the orders and then returns to his truck to fill them. If a regular customer recommends him to some one else or informs him that some one else has expressed a desire to patronize him, he calls at such other person's home, but otherwise he solicits no new business, and confines himself to serving those with whom he has previously been accustomed to deal.

The evidence shows that Danna first began to enter Moorlands Addition when certain of his customers moved out into that territory and requested that he continue to serve them there as he had at their former locations. In the winter months he visits the addition on two days a week, and in the summer months on three days a week. Of the 900 families residing in the addition, there are some 40 or 50 who are his regular customers, and these find his service to be a great convenience in relieving them of the trouble and annoyance of going personally to the market for their supplies.

The testimony was uncontradicted that there had been no signs erected warning peddlers and the like to refrain from entering the addition; that it was further shown that other persons, and particularly the dairy companies, carried on their business inside the addition by precisely the same procedure as that which Danna followed.

The original complaint about Danna's activities was made by nine of the residents in a single block of Parkdale Avenue, which is one of the streets in the addition. The first attempt at his exclusion was by the threat of causing his arrest, which proved entirely unavailing when the Clayton police refused to make the arrest unless the complaining parties, or some one for them, would assume responsibility for the prosecution. So far as the police themselves were concerned, there was no occasion for interference, since Danna was conducting his business under the authority of a peddler's and hawker's license which had been issued to him by the City of Clayton, and for which he had paid an annual license fee of $20.

The moving spirit on behalf of the complaining parties was plaintiff Biston, the secretary of the board of agents, who, besides soliciting the aid of the police, made a personal demand upon Danna to discontinue the sale of his produce within the limits of the addition. In his connection it appears that Biston read some sort of paper to Danna, which had seemingly been prepared with a view to subsequent litigation, and was designed to evidence actual notice to Danna of the private character of the addition and of the existence of the restrictive covenant against the carrying on of business in such territory. Having the support of his customers who had not only invited him to enter the addition in the first instance but who also desired that his services be continued, Danna refused to yield to Biston's demand, and shortly thereafter this suit was brought in the hope of obtaining injunctive relief.

As we have indicated in an earlier portion of the opinion, the cause of action asserted by plaintiffs was predicated solely upon the ground of a violation of the restrictive covenant that "no business shall be carried on . . . in said tract of land".

In their petition plaintiffs first alleged their *status* as the members of the board of agents for the addition which had been laid out and developed as a private residential subdivision. They then set up the execution and recording of the indenture containing the restriction against the carrying on of business in the addition, and alleged that defendants, in their capacity of hawkers or peddlers of fruits and vegetables, were carrying on their business in violation of such restriction. The prayer was that defendants be permanently restrained and enjoined from carrying on any business in the addition and from selling or attempting to sell any and all articles of produce therein; that in the meantime a temporary injunction be issued against them; and that a money judgment of $250 be entered in favor of plaintiffs, and against defendants, for damages allegedly sustained by plaintiffs as the direct result of defendants' alleged violation of the restriction.

The defense to the case, as set up by the answer, was that the restrictive covenant upon which plaintiffs' cause of action was founded applied only to the owners of lots in the addition, and that defendants' operations as hawkers or peddlers were not subject to such restrictive covenant, but were under the exclusive control of the City of Clayton, which for many years had duly licensed them to carry on their business at any place within the corporate limits of the city.

Further answering, it was alleged that any hawking or peddling which had been carried on by defendants inside the addition had been done at the solicitation and request of residents therein; that defendants had openly carried on their business in the addition for at least ten years before their right to do so was ever questioned; that many other persons had at the same time used the streets of the ad-

dition in similar manner as defendants with the knowledge and consent of the lot owners and residents in the addition; and that if plaintiffs might ever have had such a cause of action as was set up in their petition, they had been guilty of laches in asserting it.

At the trial of the case there was a decree for defendants dismissing plaintiffs' petition; and following an unavailing motion for a new trial, plaintiffs' appeal to this court has been taken in the proper course.

While there are cases to be found involving the question of the right to exclude peddlers, solicitors, and the like from entering upon private premises, there are none to our knowledge which consider the question from the standpoint of the situation which exists in the case at bar.

In most of the cases which have arisen, the question is one of the validity of city ordinances undertaking to declare a nuisance, or otherwise prohibiting house-to-house canvassing at private residences by peddlers, itinerent merchants, and solicitors. In other instances the question is one of the right of the owner of a residential apartment house or an office building to exclude persons of such character who enter the premises through the common passageways for the purpose of calling upon the tenants to whom separate portions of the premises have been let.

In this case there is no question of the violation of a city ordinance, but instead it will be remembered that Danna had carried on his business under the authority of a license which had been issued to him by the City of Clayton pursuant to its undoubted right to prescribe reasonable regulations with respect to the business of hawkers, peddlers, and other transient vendors of merchandise within its corporate limits.

Nor do plaintiffs base their case upon those grounds which might entitle the owner of an apartment or office building to exclude hawkers or peddlers from entering the premises. So far as the record in this case discloses, Danna carried on his business in full accord with established custom and usage in the private subdivision. No signs had been erected to manifest externally that hawkers or peddlers should not enter the addition, and indeed his own entry was with the consent of his customers, and in fact at their positive and express invitation. Furthermore, he did not disturb those who were not his customers, either by crying his wares, or by knocking at their doors. His business is entirely legitimate in character, and there is no claim that it constitutes a nuisance. The only question, in short, is whether he is subject to the restrictive covenant that no business shall be carried on inside the addition; and it is upon this issue, and this alone, that plaintiffs depend for injunctive relief.

The question of whether Danna is bound by such restrictive covenant is clearly to be answered in the negative.

A restriction in connection with the grant of an interest in real property is a limitation upon the full and unqualified enjoyment of the right or estate conveyed, and as such runs with the land so that the right to enforce the restriction, as well as liability for its nonobservance, passes with the title to the land itself. Such a restriction may be variously created, and where, as in this case, it is imposed on the use of land by an indenture executed and recorded pursuant to a general plan of development or improvement, it may be enforced either upon the theory of a mutuality of covenant and consideration, or else upon the ground of the creation of mutual negative equitable easements. [Peters v. Buckner, 288 Mo. 618, 232 S. W. 1024.] In any event it must have a contractual basis arising out of an agreement imposing upon both the grantor and the grantee the obligation to observe its terms; and this being the basis upon which it rests, it is enough for our present purposes to say that it may only be enforced by a party thereto or one in privity with him, and, conversely, may only be enforced against a party thereto or one in privity with him. [26 C. J. S., Deeds, sec. 167.]

Danna is of course no party to the covenant nor in privity with any one who is a party to it. Neither is it of any consequence that he has actual notice of its existence. If he owned or had an interest in one of the lots in the addition, and was attempting to operate a market upon it, he might no doubt be properly enjoined from violating the restriction against the carrying on of business inside the addition. Such a case is Hickey v. Greengard (Mo. App.), 176 S. W. (2d) 661, which has been recently decided by this court. However, Danna owns no interest in any of the land, but merely drives into the addition in his truck at the invitation of those of its residents who are his customers and desire to have the benefit of the service which he gives them. The covenant in question is only binding upon such persons as have become parties to it by virtue of acquiring an interest in the land; and since Danna does not fall within that category, he is in no sense affected by its provisions.

It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.