W. J. DEAN and BEULAH V. DEAN, Appellants, v. PAUL F. MONTEIL and ALICE MONTEIL, R. O. HERMAN and FERNE A. HERMAN, LEILA S. RUMBLE, H. J. CAWLEY, ROUBAIX R. PUETT and BLANCHE E. PUETT, WALLACE GOOD, JR., and GRACE E. GOOD, CLAUDE C. TUCKER and his Unknown Assignees, MISSOURI ABSTRACT AND TITLE INSURANCE COMPANY, a Corporation, and its Unknown Assignees, and HYDEN J. EATON, CHARLES F. DAVIS and MARIE KAY DAVIS, and M. ELIZABETH DAVIS, Respondents, No. 42205—239 S. W. (2d) 337.

Division Two, April 9, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, May 14, 1951.

*Harry I. Schwimmer, James S. Simrall, Jr.,* and *Paul Barnett* for appellants.

1206

*V. E. Phillips* for respondents Wallace Good, Jr., Grace E. Good, H. J. Cawley and Claude C. Tucker.

[338] WESTHUES, C.—Plaintiffs filed this suit to quiet title to real estate situated in Clay County, Missouri. The particular object of the suit is to remove a cloud on the title in the form of certain restrictions. A trial was had and the court declared the restrictions to be against public policy and therefore void. The defendants filed

a motion for new trial. Evidence was heard and a new trial was granted. The parties resubmitted the case to the court on the evidence taken at the first trial. The court then entered a judgment declaring the restrictions valid. The plaintiffs appealed.

The defendants Wallace Good, Jr., Grace E. Good, H. J. Cawley, and Claude C. Tucker contested plaintiffs' claim. These defendants had no interest in any portion of the land in question lying south of Highway 69 except as claimed by virtue of the agreement of May 27, 1937, signed by Leila S. Rumble and H. J. Cawley.

In 1937, Leila S. Rumble owned 80 acres of land, i. e., the West 1/2 of the Southwest 1/4 of Section 31, Township 51, Range 32, in Clay County, Missouri. Highway 69, running in a northeasterly and southwesterly direction, crossed the northwestern portion of this tract, thereby leaving a triangle of 5 acres northwest of the highway. The Securities Reserve Corporation owned a tract of 160 acres to the north. Fifty acres of this tract had been platted. It was known as the "Green Haven" subdivision. Prior to the construction of Highway 69, a roadway, Antioch Road, separated this 160 acres from the Rumble 80 acres. When Highway 69 was constructed it left 5 acres of the Rumble tract north of the highway, as above-mentioned, thus cutting off access to the highway from a portion of the 160-acre tract. The development company had planned to establish a business section along the highway. Defendant [339] H. J. Cawley, representing the Securities Reserve Corporation, negotiated with Leila S. Rumble for the sale of this 5-acre tract. A sale was consummated. Cawley testified as follows with reference to the reasons for the sale: "I was buying that property for two reasons: one, protecting the land that adjoined it, which was the 'Green Haven' Subdivision, or part of a Subdivision, and for business, buying it for business." Mr. F. E. Reed, president of the development company, testified by deposition as follows: "That was property we were getting, the five acres, so we could have a place to put in business when it was required." The sale of the 5 acres by Leila S. Rumble to H. J. Cawley was effected in May, 1937. A warranty deed was executed wherein certain restrictions were set forth as to the use of the 5 acres. The first of these reads in part as follows:

"FIRST: It is understood and agreed that any part of said tract may be used, improved or occupied for residences or business and commercial purposes, but any improvement erected for such purposes shall be of permanent character; architecturally of neat and attractive design; exterior construction of wide siding, stucco, brick or stone, with shingle or better, roof. Occupation of any part of said tract by what is commonly known as roadhouses, night clubs or tourist camps is prohibited, and sale therein, or thereon, of liquor, other than soft drinks or beer, is prohibited."

At the time the deed was executed by Leila S. Rumble, she also signed an agreement (which was recorded) whereby she attempted to place certain restrictions on all of that portion of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 51, Range 32, lying south of Highway 69, containing about 35 acres. A portion of the restrictions reads as follows:

"FIRST: That, except as herein set out, no tracts or any part of said entire tract lying South of Highway No. 69, nor any lots into which said tract may be platted or subdivided, shall be improved, used or occupied for other than private residential purposes, and no flat or apartment house, though intended for residential purposes, may be erected thereon."

The following is another portion of the agreement:

"SECOND: That a tract not exceeding one hundred fifty (150) feet frontage (in one body on the frontage between the East North and South line of Antioch Road and the South line of Highway Number 69) to be owned or occupied by one concern only, may be improved, used or occupied for business or commercial purposes, * * *."

Other restrictions pertaining to the quality and location of buildings and residences need not be mentioned since they are not material to the issues presented. The restrictions were to continue for 20 years and were to be extended automatically for 20 years unless the owners of a majority of front feet agreed to release any one or more of the restrictions.

In 1945 plaintiffs, appellants in this case, purchased all of the 80 acres lying south of Highway 69. This tract had been platted under the name of Beulmar Acres.

On December 10, 1947, all of the parties owning any interest in the land lying south of Highway 69 (which was formerly owned by Leila S. Rumble) signed an agreement releasing the land from the restrictions imposed by the agreement of May, 1937.

The defendants Wallace Good, Jr., and Grace E. Good on April 22, 1946, purchased the 5-acre tract north of the highway and other lands at a Federal Court sale. The development company holding the equitable interest in the property had been declared a bankrupt.

The main purpose of placing restrictions on the 35 acres by the agreement of May, 1937, was to protect the business interest of the development company. The evidence justifies no other conclusion.

It will be noted that title to the 35 acres as well as title to the 5 acres is no longer vested in the contracting parties. Respondents contend that the agreement creating the restrictions is valid and is a covenant running with the land and is not against public policy. Generally speaking restrictions in derogation of the fee are not favored. Mathews Real Estate Co. v. National Printing & Engraving

Co., 330 **[340]** Mo. 190, 48 S. W. (2d) 911, l. c. 913 (2-4). In 26 C. J. S. 508, Section 162b, the rule is stated as follows: "Since restrictions on the use of land are repugnant to trade and commerce, contrary to the well recognized business policy of the country, and in derogation of common law, negative easements or conditions, or covenants or limitations, restricting the use of property, are not favored in law."

Restrictions against the use of land for business purposes have been generally upheld where the object was to create a wholesome residential district. Andrews v. Metropolitan Bldg. Co., 349 Mo. 927, 163 S. W. (2d) 1024, l. c. 1030, 1031 (8-10); Pappas v. Eighty Hundred Realty Co., Mo. App., 138 S. W. (2d) 762, l. c. 764 (3); 26 C. J. S. 525, Section 164c.

The restrictions in this case cannot be sustained on the theory that a residential district was created. That was not the main purpose of the agreement. To uphold the restrictions now would serve the sole purpose of restricting competition in business. Such restrictions have been upheld within certain limitations. In Mallinckrodt Chemical Works v. Nemnich, 83 Mo. App. 6, at page 14, the court said, "The general doctrine is that agreements in restriction of trade will be upheld when the restriction does not go beyond some particular locality, is founded on a sufficient consideration, and is limited as to time, place and person." Then at page 16 we find the following: "This class of contracts is always regarded with suspicion by the courts, as their effect usually is to create a monopoly, and before any one of them will be upheld, it should clearly appear that no monopoly is created by it; that its enforcement will not prejudice the public; that it is reasonable as to time, space and person, not oppressive or injurious, and that the contract is founded on a good consideration, and that its enforcement will be useful and beneficial to the promisee." This doctrine was approved by this court in the same case. See Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388, 69 S. W. 355, l. c. 358, next to last paragraph. It was later cited with approval by the Kansas City Court of Appeals in Haysler v. Butterfield, 218 S. W. (2d) 129, l. c. 130 (1).

We find cases from other jurisdictions supporting the rule. Tardy v. Creasy, 81 Va. 553, was a case somewhat similar to the present case. The court held the restraint was binding only on the person signing the agreement; that it was against public policy to extend the restrictions to the grantees. Another case in point is Burdeil v. Grandi, 152 Cal. 376, 92 P. 1022. There the grantor restricted a territory as to sale of liquor, the grantor retaining such business for himself. The court held such a restriction to be against public policy, not on the ground that intoxicating liquor was involved but because a monopoly was created. The court quoted with approval the following taken from Chippewa Lumber Co. v. Tremper, 75 Mich. 36, 42 N. W.

532: " 'I do not believe, however, that any man or company should be permitted by the law and aided by the courts to create a monopoly in himself, either in the sale of bread or whisky.' "

The restrictions in this case prohibited the sale of liquor on the 5-acre tract as well as on the Rumble tract. However, the Rumble tract, with the exception of a small portion thereof, was not to be used for the establishment of any kind of business. The 5-acre tract was not so restricted. The agreement attempted to restrain not only Leila S. Rumble from engaging in business but also all of her grantees and thus a monopoly was created for the benefit of the owners of the 5-acre tract. We have concluded that the purpose of the agreement was to create a monopoly. The restrictions placed on the 35 acres were to be binding on anyone who should become a purchaser of any portion thereof. For these reasons the agreement was void as against public policy. The trial court ruled correctly at the conclusion of the first trial when it held that the agreement "was imposed and recorded only for the purpose and with the intent of aiding or enabling said H. J. Cawley and those claiming under him to create a monopoly in the [341] development of real estate for commercial and business purposes; that said restrictions constitute an unreasonable restraint of trade and competition,   *   *   *."

Respondents cited the following Missouri cases: Kenwood Land Co. v. Hancock Inv. Co., 169 Mo. App. 715, 155 S. W. 861; Proetz v. Central Dist. of Christian & Missionary Alliance, 191 S. W. (2d) 273; Andrews v. Metropolitan Bldg. Co., supra; Hickey v. Danna, 238 Mo. App. 839, 187 S. W. (2d) 764. All of the above cases involved the breach of restrictions in territory restricted for residential purposes. They are of no help in this case.

We shall refer to a few cases from other states cited by the respondents. In the case of Oregon Steam Navigation Co. v. Winsor, 87 U. S. 64, a navigation company sold a steamer; the purchaser agreed not to use it in competition with the vendor in certain waters for a specified period of time. The court held the contract valid. The case is not in point. The contract was restricted to the particular ship and for a certain number of years.

In the case of West Virginia Transportation Co. v. Ohio River Pipe Line Co. et al., 22 W. Va. 600, a landowner had granted an exclusive right of way through his land for a pipe line. The court held the contract void as contrary to public policy and as being in conflict with the state's right of eminent domain. The case is authority against respondents.

Tardy v. Creasy, supra, was cited by both parties and has heretofore been considered.

The judgment of the trial court is, therefore, reversed and the cause remanded with directions to the trial court to enter a decree in conformity with this opinion.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.