E. E. Shepherd, Jr., Ruth Shepherd, Eli Gingerich and Janie Gingerich, Plaintiffs-Respondents, v. L. D. Spurgeon and A. D. Van Horn, Defendants-Appellants, No. 45074—291 S. W. (2d) 162.

Division One, May 14, 1956.

Motion for Rehearing or to Transfer to Banc Overruled, June 11, 1956.

*Charles N. Pettit* and *Jayne & Jayne* for appellants.

*L. F. Cottey* for respondents.

[162] VAN OSDOL, C.—This is an action to try, ascertain and determine title to 300.77 acres of described land in Schuyler County. The issue is the validity of a recital in a deed conveying the property, by which recital the business use of the land is restricted. Plaintiffs sought a determination that the restriction is void, and a decree determining title free of the cloud of the restrictive recital. The trial court found and rendered judgment in favor of plaintiffs. Defendants have appealed,

The case was submitted to the trial court on an agreed statement of facts.

It was stipulated that the facts were that Hale Reeves and Myrel Reeves, his wife, were the owners of the described land on and for some years before September 4, 1941, and on that day. conveyed the land to plaintiffs, E. E. Shepherd, Jr., and. Ruth Shepherd, his wife, by warranty deed in which the grantors, Reeves and wife, reserved to themselves "their heirs and assigns the right to the possession, use, income, and benefit" of one acre "for a term of one hundred years, with full right to alienate and convey the same." The deed further provided that all "buildings and other improvements now on said (one) acre tract are reserved from this conveyance absolutely. Grantors reserve the right to place additional improvements, buildings and fixtures thereon and remove the same therefrom, which said right will pass to the grantees and assigns of grantors." The deed also contained the recital (which is primarily the subject of the instant litigation) as follows, "As part of the consideration hereof it is agreed that no building, booth, or enclosure within the lands herein conveyed shall ever be used for business purposes, and none shall be erected or leased for such purpose."

The north line of the described tract is approximately one mile in length and is parallel with the boundary line between the states of Missouri and Iowa. The north line of the tract is separated from the state line by an east-west public highway sometimes [163] known as the Iowa Line Road which serves rural communities east and west of the tract. U.S. Highway No. 63 is the principal north-south highway in Schuyler County. U.S. Highway No. 63 divides the described tract into two parcels so that approximately one fourth of the area of the tract lies on the west side of that Highway and approximately three fourths on the east side. The portion or parcel on the west side has a frontage of approximately one-fourth mile and the parcel on the east side has a frontage of approximately three fourths of a mile on U.S. Highway No. 63. The one-acre plot or lot (the possession, use, income, and benefit of which was reserved in the Reeves deed to the Shepherds) lies in the southwest quadrant formed by the intersection of U.S. Highway No. 63 and Iowa Line Road.

The whole of the described tract lies in a territory devoted to agricultural pursuits. It is miles distant from any town, city or industrial area. There are no parks or playgrounds and no buildings in the territory except farmhouses and ancillary buildings.

September 4, 1941, when Reeves and wife conveyed the described land with the stated reservations and restriction, the Reeves farmhouse, barn and other outbuildings were located near the southeast corner of that portion of the described tract west of U. S. Highway No. 63, and a small frame building, in which a previous owner had engaged in the sale of 3.2% beer, was located on the one-acre lot.

Reeves had enlarged the frame building and thereafter had operated a filling station, restaurant and neighborhood grocery store.

Plaintiffs, Shepherd and wife, having acquired title to the described tract on September 4, 1941, as stated, immediately entered into possession of the tract, a farm, except the reserved one-acre lot. Soon thereafter, that is, on October 29, 1941, Reeves and wife conveyed their reserved interest in the one-acre lot to defendant L. D. Spurgeon. On later dates, not shown in the record, defendant Spurgeon conveyed one half of his interest in the one-acre lot to defendant A. D. Van Horn; and plaintiffs Shepherd and wife conveyed the portion or parcel of the described farm lying west of U.S. Highway No. 63 to plaintiffs Eli and Janie Gingerich.

When defendants Spurgeon and Van Horn acquired their interest in the one-acre lot, they dismantled the small frame business building and erected a larger building in which they have engaged, through sublessees, in operating a filling station, restaurant and public dance hall and, from which building, they sell at retail groceries including oleomargarine, cigarettes, 3.2% beer, fireworks, gasoline, oil, and automobile accessories.

Further facts were stipulated as follows,

"11. That because of the location of said business, adjacent to the Iowa-Missouri state line and fronting both on U.S. Highway No. 63 and on the aforesaid Iowa Line Road, a large and profitable proportion of its revenue is derived from commerce with tourists and travelers using said highways, and, because of higher license fees and taxes and other statutory regulations on the sale and consumption of oleomargarine, cigarettes, fireworks, beer and gasoline in Iowa, an additional large proportion of the revenue of said business is derived from persons residing in Iowa who find it more economical and convenient to purchase and enjoy those commodities in the State of Missouri, and that, as a result of those factors and as a result, also, of recent improvements in the character of U.S. Highway No. 63 in the vicinity of said tract of land and of a steady increase in the volume of traffic over said highway at said point, the right to conduct various kinds of business near the intersection of the aforesaid highways and on the Missouri side of said state line is a valuable one, and the plaintiffs (the Shepherds and Gingerichs) desire to enjoy and exercise that right.

"12. That on the basis of the foregoing facts the defendants (Spurgeon and Van Horn) contend that the plaintiffs have no right to use any building, booth or enclosure [164] within the lands conveyed for business purposes, and none shall be erected or leased for such purpose for a period of 100 years from September 4, 1941; that they, the defendants, have the exclusive right to engage in business at that location, and that the nature and extent of the business in which defendants are entitled to engage

is unrestricted, except that it must be confined to said one acre lot; and that the purported restrictive covenant quoted above was inserted in the deed for the purpose of enabling the said Hale Reeves and Myrel Reeves, and the defendants as their grantees, to engage in business on said one acre lot without having a competitor on the remaining portions of said farm."

Plaintiffs assert no claim adverse to defendants' interest in the one-acre plot; and the trial court in its decree found that defendants "are the owners as tenants in common of the unexpired portion of said leasehold, and, by virtue thereof, they and their grantees are entitled to the possession, use, income and benefit of said one acre parcel until September 4th, 2041 - - -." With respect to the effect of the reservations, and the quoted recitation in the Reeves deed of September 4, 1941, in restricting the use of the rest of the described 300.77-acre tract, the trial court found that the purpose and effect of the restrictive recital was to vest in Reeves and wife "and their grantees and assigns a monopoly of business and trade in the neighborhood of said real estate; that said provision in said deed constitutes an unreasonable, unlawful and inequitable restraint upon the use and enjoyment of said real estate by the plaintiffs, and that its purpose and effect is to restrict and unreasonably to restrain trade and commerce contrary to the best interests of the public and in violation of public policy, for which reasons said recitation and provision in said deed is void and unenforceable; that the same constitutes a cloud upon the title of the plaintiffs and impairs its marketability and prevents its free use and development, and that such cloud should be removed - - -."

Defendants-appellants, in seeking to uphold the validity of the restrictive recital, cite Andrews v. Metropolitan Bldg. Co., 349 Mo. 927, 163 S.W.2d 1024; Meder v. Wilson, Mo. App., 192 S.W.2d 606; Proetz v. Central Dist. of Christian & Missionary Alliance, Mo. App., 191 S.W.2d 273; Pappas v. Eight Hundred Realty Co., Mo. App., 138 S.W.2d 762; and Hickey v. Greengard, Mo. App., 176 S.W.2d 661. These cases involve restrictions of the use of land for business purposes or of the sale of a particular commodity where the object of the various restrictive covenants was to create pleasant and wholesome residential areas. Having that main purpose or object, such restrictions generally have been upheld. Dean v. Monteil, 361 Mo. 1204, at page 1209, 239 S.W.2d 337, at page 340.

It was stated by this court in the Dean case that, generally speaking, restrictions in derogation of the fee are not favored. This court quoted from 26 C.J.S., Deeds, § 162b, page 508, as follows, "Since restrictions on the use of land are repugnant to trade and commerce, contrary to the well recognized business policy of the country, and in derogation of common law, negative easements or conditions, or covenants or limitations, restricting the use of property,

are not favored in law.'' In the Dean case a restriction against the business use of thirty-five acres (which restriction was imposed mainly to create a business monopoly in favor of an adjoining five acres) was held to be against public policy and void. In that case, as in the instant case, the restriction (in that case to continue for twenty or more years) was against the establishment of any kind of business. It was held, as stated, that the purpose of the restrictive agreement or covenant was to create a monopoly. It was imposed for the purpose and with the intent of aiding or enabling the covenantee and those claiming under him to create a monopoly in the development of real estate for commercial and business purposes.

In deciding the Dean case, this court observed that contracts in restriction of trade are regarded with suspicion by the courts, as their effect usually is to create [165] a monopoly, and before any one of them will be upheld, it should clearly appear that no monopoly is created by it; that its enforcement will not prejudice the public; that it is reasonable as to time, space and person, not oppressive or injurious, and that the contract is founded on a good consideration, and that its enforcement will be useful and beneficial to the promisee. See now the language of the St. Louis Court of Appeals in Mallinckrodt Chemical Works v. Nemnich, 83 Mo. App. 6, at page 16, id., 169 Mo. 388, 69 S.W. 355.

In the Dean case, this court also cited Tardy v. Creasy, 81 Va. 553. (The Supreme Court of Appeals of Virginia in Oliver v. Hewitt, 191 Va. 163, 60 S.E.2d 1, differentiated the Oliver case from the Tardy case on the facts. The restriction in the Oliver case was but a partial and reasonable restraint.) In the Tardy case, however, one Tolbert conveyed five and one-half acres of land to Tardy. In the deed conveying this small tract, Tolbert undertook to impose broad restrictions upon the use by himself, and successors in title, of a three hundred sixty-eight acre tract retained by him and adjoining the small tract he conveyed to Tardy. The land was located in and around a junction of railroads. The Tolbert covenants in the deeds to Tardy amounted to a commitment by Tolbert that he would abstain from engaging in any and all sorts of business on the land (368 acres) retained by him, including the abstention of the right to sell any merchandise, and the covenants also were to so restrict his heirs and assigns. The covenants were held to constitute a general restraint of trade, and void so far as they affected the lands in a successor to the title of Tolbert.

In the instant case the reservations, and the recital prohibiting the construction, lease and use of any structure for business purposes, in their combined effect, were to insure in the grantors-covenantees, Reeves and wife, and their heirs and assigns, the use of the one-acre plot for business purposes for a century without or exclusive of any business competition whatsoever on the part of the grantees or any other subsequent owners of the remainder of the land. And grantors-

covenantees could and did assign all their interest in the one-acre lot soon after the sale of their farm in 1941. It would seem the restriction, drafted to apply to the relatively large area in favor of whatever owner of the small plot for so long a time, was not designed merely for the reasonable protection of the grantors-covenantees, personally, in their business on the one-acre lot when they sold their farm in 1941. Apparently the reservation and recital provisions were a device mainly designed and fabricated to establish a business monopoly in any owner of the interest in the one-acre plot for a hundred years, and definitely such provisions do have that obviously restrictive effect. If the restrictive recital is upheld, plaintiffs, their heirs and assigns, are and will be restricted in the title and use of their land, and community development in some measure will be retarded, the owners of the farm being obliged to utilize or convey the land entirely for farming, although, as stipulated, it is the fact that their land, in its peculiar location, advantageously may now be to some extent used to the benefit of themselves in affording the benefit of convenient and competitive trade to the local and traveling public, all of which detrimental restraints are in derogation of common law and offend this country's generally recognized public policy.

It is our opinion that the trial court was right. To uphold the validity of the recital as affecting plaintiffs' title and use of their land, in the circumstances of this case, would be to sanction an unreasonable restraint of trade.

The judgment should be affirmed.

It is so ordered. *Coil* and *Holman, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.