Leon HALL and Nancy Hall, his wife,
Plaintiffs-Appellants,

v.

The AMERICAN OIL COMPANY, a corporation, et al., Defendants-Respondents,

and

R. Inn–I 55 and Lindberg, Inc., Intervenor
Defendant-Intervenor-Respondent.

Nos. 34973, 35000.

Missouri Court of Appeals,
St. Louis District,
Div. 2.

Nov. 6, 1973.

Motion for Modification of Opinion or for Rehearing or for Transfer to Supreme
Court Denied Dec. 7, 1973.

Application to Transfer Denied Feb. 11, 1974.

**314**

Bryan, Cave, McPheeters & McRoberts, St. Louis, for plaintiffs-appellants.

Coburn, Croft, Shepherd & Herzog, Leadlove, Byrne & Daly, St. Louis, Sumner, Hanlon, Sumner, MacDonald & Nouss, Clayton, for defendants-respondents.

GUNN, Judge.

Plaintiffs-appellants appeal from an order of the trial court dismissing both counts of plaintiffs' petition for failure to state a claim upon which relief could be granted. Count I of plaintiffs' petition sought a declaration of plaintiffs' rights in a parcel of land encumbered by a restrictive covenant. Count II of the petition sought money damages by reason of defendants' alleged restraint of trade in violation of Chapter 416 RSMo 1969, V.A.M. S. The issues to be resolved are whether plaintiffs' petition did state a cause of action against defendants and whether the restrictive covenant imposed is valid. We find that we are unable to determine the rights of all the parties to the action until

the matter is put at issue by defendants' answers and evidence presented. We reverse and remand.

The facts are not in dispute. In 1972, plaintiffs filed their petition in the Circuit Court of St. Louis County alleging in Count I that they were owners of certain land which had been conveyed to them by general warranty deed in 1969. Defendant-respondent American Oil Company is the owner of a parcel of land adjacent to plaintiffs' property. Defendants Fred and Estelle Schuepfer had at one time owned the two adjoining parcels of property—that which plaintiffs now own and that which American Oil Company now owns. American Oil Company received its parcel from the Schuepfers by general warranty deed dated October 18, 1965. On October 20, 1965, two days after the conveyance to American Oil Company, an instrument purporting to impose a restriction on the adjacent lot now owned by the Halls, but which at the time was owned by the Schuepfers, was recorded in the office of the St. Louis County Recorder of Deeds.[1] The apparent intent was that when American Oil Company purchased its lot from the Schuepfers, the use of the adjoining lot retained by the Schuepfers and ultimately conveyed to the plaintiffs and the subject of this suit was to be restricted against a gasoline service station. In 1966, the Schuepfers conveyed their property containing the restricted lot to defendants John and Jean Sgonina by general warranty deed. Later the Sgoninas conveyed the restricted lot to the Schuepfer Realty and Investment Company and the latter compa-

ny in turn conveyed the lot back to the Sgoninas. In 1969, the Sgoninas conveyed the restricted lot to the plaintiffs. None of the deeds of conveyance referred to the declaration of restriction, and plaintiffs allege that when they took their property they had no knowledge of any restriction.

Plaintiffs allege that in 1971, as they were preparing to execute a lease on their land to Shell Oil Company for construction of a gasoline service station, they discovered the restriction on their lot. It was further alleged that plaintiffs contacted American Oil Company concerning the restriction and were advised that the restriction had been bargained for as a part of its initial purchase of the adjoining property; that American Oil Company considered the restriction binding on all subsequent grantees of the lot adjacent to its property and refused its release.

American Oil Company has claimed an interest in plaintiffs' lot by reason of the restriction. Plaintiffs allege that American Oil Company's claim is without merit and prayed for the circuit court to try, ascertain and determine the estate, title and interest of the parties in the real estate. The prayer also included a request that plaintiffs be declared fee simple owners and that defendants be enjoined and restrained from asserting any right, title or interest in the property.

Count II of plaintiffs' petition alleged that the Schuepfers and American Oil Company had violated the Missouri Anti-Trust Statutes by their agreement to restrict the lot which plaintiffs now own.[2]

1. The purported restriction reads as follows:
"Land use hereby restricted against the erection and operation of an Auto Gas Filling Station and the dispensing and sale of Petroleum Products—all conveyances, agreements, leases and options made or given by Fred C. Schuepfer and Estelle H. Schuepfer, his wife, their heirs or assigns of any of the Real Estate herein above described, or any resurvey or subdivision thereof, or any part thereof, is made subject to the aforesaid restrictive covenant, which shall be deemed to run with the land to be kept, observed and

performed by said Fred C. Schuepfer and Estelle H. Schuepfer, his wife, their grantees, heirs, executors and assigns and by their respective grantees and assigns for as long as an Auto Filling Station shall be operated on the following described property:"
Thereafter follows a description of the property conveyed to American Oil Company.

2. Specifically, plaintiffs allege violation of § 416.010 RSMo 1959, V.A.M.S., which provides:
"Any person who shall create, enter into, become a member of or participate in any

Plaintiffs allege that the effect of the restriction prohibits them from leasing their property to Shell Oil Company; that by American Oil Company's refusal to release the restriction, the Halls are restrained in the use of their property in violation of the Missouri anti-trust statutes; that the restriction agreed to by the Schuepfers and American Oil Company, since it is in violation of the anti-trust statutes, is invalid and unenforceable.

In May, 1972, American Oil Company filed a motion to dismiss both counts of plaintiffs' petition for failure to state a claim of action. On June 8, 1972, intervenor-defendant R. Inn–I. 55 and Lindbergh, Inc., filed a motion to intervene alleging that they were owners of property abutting plaintiffs' property and that they had relied on the restrictive covenant in the land adjoining their property in the subsequent use and development of their property. Leave to intervene was granted.

On July 31, 1972, the motion to dismiss counts I and II of plaintiffs' petition was sustained, and this appeal followed.

■■■ We first decide that the plaintiffs' petition was sufficient to state a claim upon which relief could be granted. The sufficiency of a petition to state a claim must be determined from the facts stated therein, and there must be sufficiently stated facts presenting issues for determination. Klorner v. Nunn, 318 S. W.2d 241 (Mo.1958). In reviewing the plaintiffs' petition for sufficiency, the general rule is that the petition must be viewed

most favorably to the plaintiffs with all the facts alleged being deemed admitted and with plaintiff receiving the benefit of all favorable inferences from such facts. Martin v. Shull, 475 S.W.2d 1 (Mo.1972). The prayer of the petition after the allegations made as to the facts is that the court ascertain the title and interest of the parties and define and adjudge the plaintiffs as the fee simple owners with all rights and interest in themselves. The declaration of restriction was attached to the petition as an exhibit and having been so incorporated becomes a part of the petition for all purposes. City of Joplin v. Village of Shoal Creek Drive, 434 S.W.2d 25 (Mo.App.1968). A dispute as to the purpose and effect of the restriction and whether plaintiffs hold their property subject to the restriction has been alleged and exists. Also, plaintiffs seek to establish title in their property without regard to any rights of defendants. A cause of action is thus stated. Stottle v. Brittian, 459 S.W. 2d 310 (Mo.1970); Jones v. Garden Park Homes Corporation, 393 S.W.2d 501 (Mo. 1965); Titus v. Tolle, 284 Mo. 175, 223 S.W. 885 (1920).

■■■ But the pivotal underlying issue in this case and what has been raised and depends on matters of fact and requires evidentiary enlightenment is whether the covenant purporting to restrict the use of the plaintiffs' property against an automobile gasoline service station is binding upon plaintiffs as subsequent grantees of the property by reason of the covenant being real or personal.[3] We do not have before

---

pool, trust, agreement, combination, confederation or understanding with any person or persons in restraint of trade or competition in the importation, transportation, manufacture, purchase or sale of any product or commodity in this state, or any article or thing bought or sold whatsoever, shall be deemed and adjudged guilty of a conspiracy in restraint of trade, and shall be punished as provided in sections 416.010 to 416.100, 416.240, 416.260 to 416.290 and 416.400."

3. The distinction is made between real and personal restrictive covenants, the former be-

ing those which "touch and concern" or benefit the land and which may run with the land; the latter are those which, as recognized in Tulk v. Moxhay, 2 Phil. C.H. 774, 41 Eng.Rep. 1143 (1848), are personal regarding the use or restriction upon the land between the grantor and grantee, not attaching to the land but binding upon a successor purchaser who purchases with notice, actual or constructive, of the covenant. We forbear the adventure of a full discussion on equitable servitudes and restrictive covenants, as we believe sufficient guidelines have been specified for the trial court to follow in determining the

us sufficient information on which to rest a decision as to the validity of the covenant.

■■ In this case, as to plaintiffs, if the restrictive covenant is ultimately determined to be valid, it is inconsequential whether it is denominated real or personal. If it is a valid real restrictive covenant, it would run with the land and thus bind plaintiffs. If it is to be designated a personal covenant, it would likewise bind plaintiffs, since by its recordation plaintiffs are presumed to have constructive notice of its existence and would be bound thereby; that plaintiffs disavowed knowledge of the existence of the covenant is of no significance.. Toothaker v. Pleasant, 315 Mo. 1239, 288 S.W. 38 (1926); Cook v. Tide Water Associated Oil Company, 281 S.W.2d 415 (Mo.App.1955).

■■ The free and untrammeled use of land is favored and restrictive covenants are to be strictly construed and any doubt as to their validity is to be resolved in favor of the free use of the property. Steve Vogli & Co. v. Lane, 405 S.W.2d 885 (Mo.1966); Pellegrini v. Fournie, 501 S.W.2d 564 (Mo.App.1973) (No. 34,859). But that is not to say that a covenant of the type in this case, ostensibly imposing a land restriction upon subsequent grantees of the land so encumbered, would necessarily be invalid, particularly where the covenant has been recorded. Such was the case in Cook v. Tide Water Associated Oil Company, *supra*. However, in order for such a covenant to be valid in Missouri, it must not transgress certain standards, for restrictions in derogation of the fee are not favored. Kerrick v. Schoenberg, 328 S.W.2d 595 (Mo.1959); Dean v. Monteil, 361 Mo. 1204, 239 S.W.2d 337 (1951). Dean v. Monteil, *supra*, found that a restrictive covenant protecting business interests was void as against public policy and did not run with the land or apply to subsequent purchasers of the property upon which the restrictive covenant was to have attached. The court, in quoting from Mallinckrodt Chemical Works v. Nemnich, 83 Mo.App. 6 (1899), at pages 14 and 16, stated:

" 'The general doctrine is that agreements in restriction of trade will be upheld when the restriction does not go beyond some particular locality, is founded on a sufficient consideration, and is limited as to time, place and person.' " * * * " 'This class of contracts is always regarded with suspicion by the courts, as their effect usually is to create a monopoly, and before any one of them will be upheld, it should clearly appear that no monopoly is created by it; that its enforcement will not prejudice the public; that it is reasonable as to time, space and person, not oppressive or injurious, and that the contract is founded on a good consideration, and that its enforcement will be useful and beneficial to the promisee.' " [4]

issues in this case. But we note that the trend in other jurisdictions is toward a more liberalized approach in upholding reasonable restrictive covenants as to business enterprises. See Oliver v. Hewitt, 191 Va. 163, 60 S.E.2d 1 (Va.1950). Cf. Shell Oil Co. v. Henry Ouellette & Sons, Inc., 352 Mass. 725, 227 N.E.2d 509 (Mass.1967). For detailed discussions on equitable servitudes and personal and real covenants, see 3 Tiffany, Real Property §§ 848–857 (3rd ed. 1939); 9 Ariz.L. Rev. 441 (1967–68); 41 Va.L.Rev. 675 (1955); Annot., 23 A.L.R.2d 520–531 (1952).

4. An update and more definite portrayal of the standards recited in Mallinckrodt Chemical Works v. Nemnich, *supra*, can be found in the California case of Doo v. Packwood, 265 Cal.App.2d 752, 71 Cal.Rptr. 477, 480 (Dist.Ct.App.1962):

" 'While the courts have manifested some disfavor of covenants restricting the use of property, they have generally sustained them where reasonable, not contrary to public policy or to law, and not in restraint of trade or for the purpose of creating a monopoly. Restrictions per se are not violative of the public good, inimical to public policy, or subversive of the public interests, and it has been said that building restrictions have never been regarded as impolitic. However, a restriction imposed on property conveyed may

This same principle was adopted in Kerrick v. Schoenberg, *supra*, where a restrictive covenant similar to that involved in this case recited: "The seller agrees not to sell any of the present holdings of land in this area for other gasoline filling stations." The same standards as set forth in Mallinckrodt Chemical Works v. Nemnich, *supra*, and Dean v. Monteil, *supra*, were repeated with the court in Kerrick finding:

> "We deem the provision in the contract under consideration, purporting indefinitely to restrict against any sale of any part of defendants' adjoining lands for use of any other filling station, to be void as in restraint of trade and as against public policy, and that it is not a covenant running with the adjoining land of the defendants, nor any charge or encumbrance thereon, and has no place in the contract or in the deed to which plaintiff is entitled." (1. c. 602 of 328 S.W.2d)

Thus, from the Mallinckrodt case, Dean v. Monteil and Kerrick v. Schoenberg,[5] we have standards set forth upon which a court may determine whether a covenant of the type in this case may be valid. We cannot in this complex case on the naked pleading before us make determination whether the restrictive covenant can stand. It is essential that there be evidence touching on each of the criterion elicited. The guidelines set forth in the early Missouri case of Skrainka v. Scharringhausen, 8 Mo.App. 522, 525 (1880), are also appropriate:

> " * '* * Where the contract injures the parties making it by diminishing

their means for supporting their families, tends to deprive the public of the services of useful men, discourages industry, diminishes production, prevents competition, enhances prices, and, being made by large companies or corporations, excludes rivalry and engrosses the market . . . it is against the policy of the law. But restraints upon trade imposed by agreement, under limitations as to locality, time, and persons, are not necessarily restraints of trade in the general sense which is objectionable."

Also, from Kerrick v. Schoenberg, *supra*, is the required finding that the contract establishing the restrictive covenant be based on good consideration. We have no evidence of a contract before us in this case, and this facet should be developed.

■■ The time factor requires comment. We do not regard the time limitation "so long as an auto filling station shall be operated on" American Oil Company's property necessarily oppressive. Such a time limitation can be compatible with the purposes of the covenant and in many instances less onerous as a burden on property than a restriction for years where the purpose of the restriction ceases to exist and the restriction would be no longer purposeful. Shepherd v. Spurgeon, 365 Mo. 989, 291 S.W.2d 162 (1956) (100 Year Restriction ruled unreasonable). An indefinite time restriction was approved in Cook v. Tide Water Associated Oil Co., *supra*. Whether the type of time limitation sought to be imposed in this case would be proper will depend on the facts developed. If the indefinite time limitation is approved, but it should later develop that it has become

---

be invalid if it contravenes some constitutional or statutory provision, or where it is of no benefit to anyone and its enforcement might seriously interfere with the proper development of the community, and restrictions which amount to a prohibition of use of the property are void. Subject to these limitations, the court will enforce restrictions to the same extent that it would lend judicial sanction to

any other valid contractual relationship. So long as the beneficial enjoyment of the estate is not materially impaired and the public good and interests are not violated, such restrictions are valid.' "

5. The Dean and Kerrick cases involved attempted restrictions on 35 and 600 acres of land, respectively.

unreasonable or burdensome, the property owner of the servient tenement would not be precluded from bringing an action for the removal of the condition based on a change of circumstances. Marks v. Bettendorf's Inc., 337 S.W.2d 585 (Mo.App. 1960).

Thus, using the patterns referred to in the recited cases, such as contract consideration, reasonableness as to time, space and person, monopolistic considerations and usefulness and benefit to the benefactor of the covenant, surrounding business and competitive conditions, and effect on public policy, the case should be referred to the trial court for evidence on such guidelines. Without such evidence, we are unable to determine how this case harmonizes with the standards of Dean v. Monteil, *supra,* Kerrick v. Schoenberg, *supra,* Cook v. Tide Water Associated Oil Company, and Mallinckrodt Chemical Works v. Nemnich, *supra.* More is needed.

It is charged in Count II of plaintiffs' petition—although, as confessed by plaintiffs, inelegantly drawn—that American Oil Company bargained for the restriction on plaintiffs' property, the effect of which was to violate the Missouri anti-trust statutes by restricting the use of plaintiffs' property against a gasoline filling station when plaintiffs had a lessee available for such purpose. The facts alleged are marginally sufficient to establish a cause of action. Reisenbichler v. Marquette Cement Co., 341 Mo. 744, 108 S.W.2d 343 (1937). Plaintiffs should be permitted to develop their anti-trust case also, and whether a violation exists will depend on the evidence presented.

The judgment is, accordingly, reversed and remanded for trial.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.