Everett WHEELOCK and June Wheelock and Gary E. Kresse, Respondents,

v.

Dan W. GIBSON and A. Lorraine Gibson, Appellants.

No. WD 38368.

Missouri Court of Appeals, Western District.

Dec. 8, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

Thomas T. Wood, Independence, for appellants.

W. Gary Drover, Camdenton, for respondents.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

PRITCHARD, *Presiding Judge.*

This is a suit initiated by respondents to require appellants to remove their boatdock in a cove in the Gravois arm of the Lake of the Ozarks from its present location and for an order restraining appellants from maintaining a dock or other structure in such a way as to violate a 1967 agreement entered into by the Wheelocks, owners of Lots 1, 2 and the North half of Lot 7 in Homewood Subdivision; L.A. and Melba Dean Cowles, then owners of Lot 2 of Firoved Addition, and predecessors in title to respondent Kresse; and Richard F. Dunklee and Bernice I. Dunklee, then owners of Lot 3 of Firoved Addition, and predecessors in title to appellants.

In the 1967 agreement the Wheelocks agreed they would not maintain a boat dock, ramp, or other improvement anywhere North and East of Line A, or North and West of Line B, on the attached plat. The Cowles agreed that they would not maintain a boat dock, ramp, or other improvement anywhere South and West of the centerline (of the cove); or North and West of Line B, both as shown on the attached plat. The Dunklees agreed that they would not maintain a boat dock, ramp, or other improvement anywhere South and West of Line A, or South and East of Line B, as shown on the attached plat. All parties further agreed not to dredge or excavate any lands lying below the 660 foot contour of the lake. It was further provided that the covenants and agreements are to be covenants running with the land, are to benefit and burden the lands owned by the parties, which were to be conveyed, descend, be devised, or otherwise alienated subject to the terms and conditions of the agreement. Dan W. Gibson admitted in deposition that when he bought the property (*Lot 3 of Firoved Addition*) in 1978, he knew there was an agreement concerning the location of boat docks; that as far as he knew it was recorded in the Office of Recorder of Deeds in Morgan County; and as far as he knew the agreement is the same as what was on his sales contract.

The plat of the cove shows that Line A begins at the south end of Wheelocks' Lot 1, at the southwesterly corner of Gibsons' Lot 3, and on a course of S. 52° 18′ E., runs out into the cove 117 feet. Line B begins at the southeasterly corner of Gibsons' Lot 3, and as an extension of the southeast line of Lot 3, extends 90 feet into the cove

where it intersects with Line A. The location of the boundaries of these lines is thus ascertainable.

The Gibsons seasonally lease mobile homes on their property, including the right of tenants to use the boat docks. In times of low water, sometimes down as much as 7 feet, their boat docks and ramps are on dry land because the northerly end of the cove has very shallow water. To avoid that problem, the Gibsons moved their ramps and boat dock to the south out in the cove. The Gibsons also erected a larger, three-well dock after they acquired Lot 3.

Mr. Wheelock employed Dexter Slagle, a licensed land surveyor, to make a survey of the cove and lots in October, 1982. He found a boat dock coming from the Gibsons' Lot 3, which dock had its west portion 10 to 12 feet across Line A. He measured from a point on Wheelocks' Lot 1, Homewood Subdivision, to the corners of the boat dock, and drew on the plat by courses and distances its then location, which is clearly beyond the intersection of Line A and B. This suit was filed in November, 1982.

The trial court entered judgment for the Wheelocks against the Gibsons ordering them to remove their boat dock and structures from its present location and permanently restraining them from maintaining a boat dock or other structure in such a way as to violate the terms of the 1967 agreement. It also entered judgment on Gibsons' counterclaim against Kresse ordering him to remove a portion of his fence which encroaches on Gibsons' land. Kresse is not a party to this appeal.

■ Appellants, in Point I, first contend that the trial court erred in finding that the agreement was entered into for valuable consideration and for the purpose of protecting the beauty, utility and value of the three respective properties, because the clear weight of the evidence indicates that appellants bear the only burden and receive no benefit from the agreement, and the primary purpose thereof was to protect Wheelocks' railway dock which has not been used for many years. The simulta-neous mutual promises of the Wheelocks, Cowles and Dunklees in the 1967 agreement supply sufficient consideration for it. *Allied Disposal, Inc. v. Bob's Home Service, Inc.*, 595 S.W.2d 417, 419[2–3] (Mo. App.1980), and cases cited; *Ragan v. Schreffler*, 306 S.W.2d 494, 499[9,10] (Mo. 1957). Not only does each party have the benefit of not having his use and enjoyment of his land interfered with by the placement of boat docks in the cove, but each party has a burden or obligation not to place boat docks so as to interfere with the land use and enjoyment of the other two parties. There is of course a burden upon appellants to respect the agreement, but that is also a burden upon the other two parties. There is not a sole purpose to protect Wheelocks' railway dock, which, according to the plat, lies to the west of Line A, and extends 284 feet into the cove. The 1967 agreement is supported by sufficient consideration running to and from each of the three parties. Point I is overruled.

■ In Point II appellants claim that the trial court erred in finding that the intention of the parties was that the agreement should run with the land and bind and benefit their assignees, heirs and successors in title, because the agreement is not a part of a general plan for development of the lake, nor is the owner thereof a party to the agreement; and the benefit of such with respect to the Wheelocks was to protect their railway dock.

The 1967 agreement does recite that its covenants are to run with the land, which are to benefit and burden the lands of the parties, which were to be conveyed, descend, devised or alienated subject to the terms of the agreement. Although definitely bearing upon the intention of the parties, that recitation is not necessary to cause the covenants to run with the land. *Kerrick v. Schoenberg*, 328 S.W.2d 595, 601[7, 8] (Mo.1959). In *Hall v. American Oil Company*, 504 S.W.2d 313, 317[6, 7] (Mo.App.1973), it was said, " * * * [I]f the restrictive covenant is ultimately determined to be valid, it is inconsequential whether it is denominated real or personal. If it is a valid real restrictive covenant, it

would run with the land and thus bind plaintiffs. If it is to be designated a personal covenant, it would likewise bind plaintiffs, since by its recordation plaintiffs are presumed to have constructive notice of its existence and would be bound thereby; * * *." [Here appellants admitted to actual knowledge of the 1967 agreement.] See also *Cook v. Tide Water Associated Oil Company*, 281 S.W.2d 415, 418–419 (Mo. App.1955), discussing covenants running with the land, and saying, "* * * [T]he fact that a restriction is not created by deed but rests on contract does not affect the right to enforce it as a covenant running with the land." It is not of consequence that the agreement had nothing to do with the development of *the* lake, or that the owner of *the lake* was not a party. The agreement had to do with the ownership and use of its parties' use of boat docks in connection with the enjoyment of their lake front properties. The restriction had nothing to do with preserving the Wheelocks' railway dock, although an interference with its use might be actionable. Point II is overruled.

■ In Point III the contention is that the trial court erred in finding that there have been no changes in circumstances which affect the enforceability of the agreement. No case is cited which holds what changes in circumstances render an agreement such as this unenforceable. There was some evidence that the depth of the cove had changed somewhat caused by silting from erosion from surrounding lots and by the excavation of silt from the bottom of the cove. The evidence is that the lake level fluctuation had not appreciably and seasonably changed since 1948 or 1949—it would be down prior to April, and the Dunklees' dock, and that of appellants would be on dry land. All this evidence was for the trial court to determine. Besides, in *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309, 312 (Mo.App.1981), it was said, "In determining whether to enforce a restrictive covenant or declare it void, our courts focus on the covenant's continued value and do not balance the relative economic hardships of the dominent and servient estates. (Citations omitted.) Thus,

the court will enforce a restrictive covenant if it remains of substantial value to the dominant estate, even though changed conditions have caused a hardship to the servient estate. (Citations omitted)." Here, the agreement still has value to the Wheelocks; it also has value to appellants. Each, as dominent estate holders, has an interest in preventing the congestion in the cove caused by changed locations of boat docks. Any hardship on the servient estates of each must give way to the dominant estate interests, even assuming that there has been an adverse change of circumstances affecting the servient estates. The trial court did not err in ruling the issue against appellants.

■ Lastly, appellants say that the trial court erred in finding that they violated the agreement by moving and maintaining their boat dock across the agreed boundary [Lines A and B], because these were temporary precautions to avoid damage or destruction, and that the totality of the circumstances lead to the conclusion that the parties never intended that appellants be financially ruined, their boat dock damaged or destroyed, and their tenants' boats on dry land whenever the lake fell below the 660 foot level. These arguments are irrelevant. The evidence is clear that appellants received their deed under the same hardships that the Dunklees had. It is further clear that appellants violated the 1967 agreement by tethering their boat dock beyond the boundaries of Lines A and B. That is the real and determinative issue. The judgment of the trial court is supported by substantial evidence; it is not against the weight of the evidence; and it correctly declares and applies the law.

The judgment is affirmed.

All concur.